# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WHARF, INC., *et al.*,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al..*,

      Defendants.

Civil Action No. 15-1198 (CKK)

## MEMORANDUM OPINION
(September 28, 2015)

Plaintiffs filed suit on July 23, 2015, against the District of Columbia ("the District") as well as Hoffman-Madison Waterfront, LLC and Wharf Horizontal Reit Leaseholder, LLC ("Developer Defendants"). Plaintiffs allege that the Developer Defendants violated the terms of the parties' lease agreements, and that the District violated the Takings Clause of the Fifth Amendment by impeding access to the leased property.  Presently before the Court are Developer Defendants' [20] Motion to Dismiss Plaintiffs' First Amended Complaint and the Defendant District's [25] Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal

---

[1] 1st Amend. Compl. ("Compl."), ECF No. [17]; Defs.' Hoffman-Madison Waterfront LLC's and the Wharf Horizontal Reit Leaseholder, LLC's Mot. to Dismiss Pls.' 1st Amend. Compl. ("Developer Defs.' Mot. to Dismiss"), ECF No. [20]; Pls.' Br. in Opp'n to Defs. Hoffman-Madison Waterfront, LLC's and the Wharf Horizontal Reit Leaseholder, LLC's Mot. to Dismiss Pls.' 1st Amend. Compl. ("Pls.' Opp'n to Developer Defs.' Mot. to Dismiss"), ECF No. [26]; Defs. Hoffman-Madison Waterfront LLC and Wharf Horizontal Reit Leaseholder LLC's Reply in Supp. of their Mot. to Dismiss ("Developer Defs.' Reply to Mot. to Dismiss"), ECF No. [34]; Def. District of Columbia's Mot. to Dismiss ("Def. D.C.'s Mot. to Dismiss"), ECF No. [25]; Pls.' Brief in Opp'n to Def. District of Columbia's Mot. to Dismiss ("Pls.' Opp'n to D.C.'s Mot. to Dismiss"), ECF No. [28]; Def. District of Columbia's Reply to Pls.' Opp'n to the District Mot. to Dismiss ("Def. D.C.'s Reply to Mot. to Dismiss"), ECF No. [37].

authorities, and the record as a whole, the Court DENIES both motions to dismiss for the reasons described herein.[2]

## I. BACKGROUND

For the purposes of the motions before the Court, the Court accepts as true the allegations in Plaintiffs' First Amended Complaint. *See generally* Compl., ECF No. [17].   The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the principal facts pertaining to the issues raised in the pending motions relying on the Complaint and undisputed and/or uncontroverted facts.

This case concerns the Municipal Fish Market located at 1100 Maine Avenue, S.W., Washington, D.C. ("Municipal Fish Market" or "the Market"). Compl. ¶ 1. Plaintiffs, Wharf, Inc. ("The Wharf"), BRW, Inc. ("Captain White"), and Salt Water Seafood, Inc. ("Salt Water"), run three seafood businesses in the Municipal Fish Market and bring this action as lessees of property located within the Market. *Id.* ¶ 2.   Each of the Plaintiffs' businesses is owned and operated by members of the White family. *Id.* ¶ 34.   Defendants are the District of Columbia ("the District"), the original lessor of the property at issue, and Hoffman-Madison Waterfront, LLC and Wharf Horizontal Reit Leaseholder, LLC ("Developer Defendants"), the private entities to which the District assigned its rights to the leases in question in 2014. *Id.* ¶¶ 1, 44.

---

[2] Plaintiffs filed two requests for the Court to take judicial notice of certain documents in support of their oppositions to the Defendants' motions to dismiss. *See* Pls.' Request for Judicial Notice ("Pls.' 1st Request for Jud. Notice"), ECF No. [27]; Pls.' Request for Judicial Notice ("Pls.' 2nd Request for Jud. Notice"), ECF No. [29].   The Court grants Plaintiffs' request as to all documents except the newspaper articles which the Court has determined that it need not rely on to render its decision on the pending motions to dismiss.

The commercial leases at issue are: the agreement entered into by The Wharf and the District dated July 12, 2000, *id.* ¶ 35; the agreement entered into by Captain White and the District dated July 12, 2000, *id.* ¶ 37; and the agreement originally entered into by Pruitt's Seafood, Inc., and the District dated April 1, 2001, and subsequently assumed by Salt Water (then doing business as W.D., Inc.) from DNM Seafood, Inc. on March 20, 2014, with the consent of then-lessor, the District, *id.* ¶ 40, Ex. D.  The term of the lease agreements at issue is defined as "[t]he period that begins on the Commencement Date and ends thirty (30) Lease Years after the New Rent Commencement Date, unless sooner terminated pursuant to this Lease." [3]  *Id.*, Ex. A at 7; *id.*, Ex. C at 6; *id.*, Ex. D at 16. [4]  On April 23, 2014, the District assigned the leases at issue to Developer Defendants.  *Id.* ¶ 44.  Plaintiffs allege that Developer Defendants breached the terms of their lease agreements and otherwise interfered with their use of the leased property.  *See generally id.* ¶¶ 91-160.

Plaintiffs also bring a claim against the District of Columbia related to access to the leased property.  Prior to May 2014, the Municipal Fish Market could be accessed by vehicular and pedestrian foot traffic via Water Street.  *Id.* ¶¶ 57, 69-70.  On June 7, 2011, the Council of the District of Columbia passed Bill 19-69, "Closing of Water Street, S.O. 10-15906 Act of 2011," and the Mayor of the District signed the bill on June 28, 2011.  *Id.* ¶¶ 63, 65, 68.  Water Street remained in public use until May 2014 when it began to be periodically closed.  *Id.* ¶¶ 69-70.  On November 2014, a hole was dug in the location where Water Street was located.  *Id.* ¶ 71.  Plaintiffs

---

[3] A court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint.'"  *See, e.g., Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

[4] Page numbers for exhibits attached to the Complaint refer to the numbers automatically assigned to the documents as they were filed in ECF.

allege "[b]y closing Water Street, the primary entrance to the Municipal Market was eliminated." *Id.* ¶ 72.

In their Complaint, Plaintiffs raise one claim against the District, a Fifth Amendment Takings Clause claim (Count I).  Plaintiffs also raise eight state and common law claims against the Developer Defendants: declaratory judgment (Count II); specific performance and injunctive relief based on breach of lease (Count III); damages based on breach of lease (Count IV); breach of the covenant of good faith and fair dealings (Count V); trespass and conversion (Count VI); nuisance (Count VII); tortious interference with prospective business advantage (Count VIII); and unjust enrichment (Count IX).  Defendants now move the Court to dismiss all of Plaintiffs' claims.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). Further, in deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

A motion to dismiss may be granted on statute of limitations grounds only if apparent from the face of the complaint. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint"). "Because statute of limitations defenses often are based on contested facts, the court should be cautious in granting a motion to dismiss on such grounds; 'dismissal is appropriate only if the complaint on its face is conclusively time-barred.'" *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

### III. DISCUSSION

Developer Defendants in their Motion to Dismiss assert that Plaintiffs do not hold valid leases to the property in question because the leases were terminated.  As such, the Developer Defendants contend that the Court should dismiss Plaintiffs' claims against them in their entirety. Developer Defs.' Br.. in Supp. of Mot. to Dismiss at 6, ECF No. [20-1].  The District argues that the Court also should dismiss the Fifth Amendment Takings Clause claim, the sole claim against

the District, for two reasons.  First, the District adopts the arguments made by the Developer Defendants that the Plaintiffs do not have a valid leasehold interest in the property, but does not make any additional arguments in support of this contention.  Rather, the District asserts that because Plaintiffs do not have legally enforceable interests in the property, the District has not taken their property without just compensation.  Def. D.C.'s Memo. in Supp. of Mot. to Dismiss at 6, ECF No. [25-1].  Second, the District argues that Plaintiffs' Takings Clause claim is time-barred by the applicable three-year statute of limitations.  *Id.* at 4-6.  The Court shall first address the District's statute of limitations argument and then shall address the validity of the lease agreements at issue in this action.

Before starting its discussion, the Court acknowledges that parsing the language of the statute and documents, and discerning the nuanced meaning of the words in those documents has been a challenging exercise of judgment.  The Court agrees that the parties have proffered positions that have merit on both sides of the issues and, as such, recognizes that the decision on both issues is difficult.  However, the Court is left to determine which party has presented the more persuasive argument and, as described in more detail below, Plaintiffs have persuaded the Court of their position.

**A.  Plaintiffs' Taking Clause Claim is Not Barred by the Statute of Limitations**

Plaintiffs assert that the District violated the Takings Clause of the Fifth Amendment by impairing access to Plaintiffs' leased property without just compensation as a result of the closure of Water Street in Southwest D.C.  Compl. ¶ 162.  The District alleges that Plaintiffs' Fifth Amendment Takings Clause claim, the sole claim under federal law, is time barred by the applicable statute of limitations.  It is undisputed by the parties that D.C. Code § 12-301 provides the limitation of time for bringing a Takings Clause claim against the District.  Def. D.C.'s Memo.

in Supp. of Mot. to Dismiss at 5; *see* Pls.' Opp'n to Def. D.C.'s Mot. to Dismiss at 14, 17

(discussing the three-year statute of limitations applicable to a takings claim); *Id.* at 18 n.13 (citing

D.C. Code § 12-301(3)).   Pursuant to D.C. Code § 12-301(3), there is a three-year statute of

limitations applicable to a cause of action seeking to recover damages for an injury to real

property.[5]  The parties dispute when the statute of limitations began to run.  However, the facts

surrounding the parties' arguments are undisputed.   For the reasons described herein, the Court

finds that Plaintiffs' takings claim is not barred by the statute of limitations.

On June 7, 2011, the D.C. Council passed Bill 19-69, "Closing of Water Street, S.W., S.O.

10-15906, Act of 2011" ("Water Street Act").  Compl. ¶¶ 63, 65.  On June 28, 2011, then-Mayor

Vincent C. Gray signed Bill 19-69, which as enacted became D.C. Act 19-90.  *Id.* ¶ 68. On August

17, 2011, the period for Congressional review expired and, as a result, the Water Street Act became

effective.  *Id.*  As of the effective date, the legislation became D.C. Law 19-19.  *Id.*

The Council enacted the Water Street Act: "To order the closing of Water Street, S.W., and

limited portions of 7th Street, S.W., 9th Street, S.W., M Place, S.W., and N Street, S.W., for the

redevelopment of the Southwest Waterfront in Ward 6, to provide for timing for said closure, and

to provide for continued access to ongoing operations during the redevelopment of the Southwest

Waterfront." 58 D.C. Reg. 5559 (Jul. 8, 2011).  However, the Act also provides:

> [T]he Council of the District of Columbia finds that Water Street, S.W., and limited
> portions of 7th Street, S.W., 9th Street, S.W., M Place, S.W., and N Street, S.W.,
> as shown on the Surveyor's plat filed under S.O. 10-15906 ('Street Closing Plat'),
> are unnecessary for street purposes and orders them closed, with title to the land to

---

[5] The District asserts that if section (3) of D.C. Code § 12-301 is inapplicable to the instant action, then alternatively section (8), the residual statute of limitations, is applicable and also imposes a three-year statute of limitations.  Def. D.C.'s Memo. in Supp. of Mot. to Dismiss at 5. The Court finds that section (3) is applicable because Plaintiffs' takings claim is premised on an alleged injury to real property.  However, the Court accepts the District's argument, which has not been contested by Plaintiffs, that if section (3) is inapplicable, then section (8) would apply to the instant action.

vest as shown on the Street Closing Plat. This closure is required for the redevelopment of the Southwest Waterfront, pursuant to the Amended and Restated Land Disposition Agreement between Hoffman-Struever Waterfront L.L.C. and the District of Columbia dated May 13, 2009, as amended by that certain First Amendment to Amended and Restated Land Disposition Agreement dated June 11, 2010 and *as may hereafter be further amended ('LDA')*. The Council has approved the disposition of the project site in accordance with the terms of the LDA pursuant to the Southwest Waterfront Disposition Third Revised Emergency Approval Resolution of 2008, effective December 16, 2008 (Res. 17-955; 56 DCR 744). *The disposition of the project site is effectuated by the recordation of the Development Site Ground Lease as defined in the LDA ('Ground Lease') in the Land Records for the District of Columbia ('Land Records').*

*Id.* (emphasis added).  Moreover, the Act provides:

Pursuant to section 209 of the [Street and Alley Closing and Acquisition Procedures Act of 1982], and notwithstanding any other provision of law, the Mayor shall record the Street Closing Plat in the records of the Office of the Surveyor for the District of Columbia ('Surveyor Records'), officially closing Water Street, S.W., and limited portions of 7th Street, S.W., 9th Street, S.W., M Place, S.W., and N Street, S.W., upon receipt of a certified copy of the recorded Ground Lease in the Land Records being delivered to the Surveyor.

*Id.* at 5559-60.  Pursuant to section 209 of the Street and Alley Closing and Acquisition Procedures Act of 1982, as codified at D.C. Code § 9-202.09(a)(3), the statute provides that "[t]he Council may make the approval of a closing of all or part of a street or alley *contingent upon . . . [a]ny other condition* that the Council considers necessary."

The Report completed by the D.C. Council's Committee of the Whole with respect to this legislation further explains:

The Committee notes that the disposition of the project site is effectuated by the recordation of the Development Site Ground Lease as defined in the LDA in the Land Records for the District of Columbia. *Therefore, the streets will still remain in use as before this legislation until Hoffman-Struever Waterfront L.L.C. closes with the District on the LDA.* The Committee also notes that the closing of these streets now will facilitate necessary financing and, as Lamont Hoffman, Chief Executive Officer of PN Hoffman, Inc., stated in his testimony, will help to 'eliminate as many contingent liabilities as possible as early in the process . . . to obtain commitments from institutional investors and lenders.'

Pls.' Opp'n to Def. D.C.'s Mot. to Dismiss, Ex. A at 4 (Committee Report) (emphasis added).

In sum, pursuant to the terms of the Act, Water Street remained open until: (1) the disposition of the project site which was effectuated by the District and Hoffman-Struever Waterfront LLC completing the "LDA," i.e., the ground lease, and recording it with the Land Records for the District; and (2) the Mayor recording the Plat with the Surveyor's Office.  On April 23, 2014, the District and Wharf Horizontal Reit Leaseholder LLC finalized their Ground Lease Agreement.  *See* Pls.' Opp'n to Def. D.C.'s Mot. to Dismiss, Ex. C (Ground Lease Agreement).  On May 5, 2014, the Plat was recorded with the Surveyor's Office and the ground lease was recorded with the Recorder of Deeds, fulfilling all the conditions required to close Water Street under the Act.  *See id.*, Ex. D (Plat for Public Street Closure).  After that time Water Street was closed intermittently and eventually was closed permanently.

The parties dispute the relevant accrual date for the statute of limitations.  The District argues that the statute of limitations began to run on August 17, 2011, the date that the Water Street Act became effective and, as such, the three-year statute of limitation expired prior to the Plaintiffs' filing of the Complaint in this action on July 23, 2015.  However, Plaintiffs argue that the statute of limitations began to run on May 5, 2014, the date that the Plat was recorded with the Surveyor's Office and the ground lease was recorded with the Recorder of Deeds, rendering their takings claim timely.  Accordingly, the issue before the Court is whether the three-year statute of limitations on the takings claim began to run on the effective date of the Act or on the date that the District had completed all conditions required under the Act to close Water Street.

Plaintiffs allege that the closure of Water Street constituted an impermissible taking within the meaning of the Fifth Amendment.  *See, e.g., Lucas v. South Carolina Coastal Council*, 505

U.S. 1003, 1014 (1992) (internal citation omitted) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.").  "In general, a takings 'claim first accrues when all the events have occurred which fix the alleged liability of the [government] and entitle the plaintiff to institute an action.'"  *Navajo Nation v. United States*, 631 F.3d 1268, 1273 (Fed. Cir. 2011) (quoting *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir. 1988)).  "'Therefore, a claim under the Fifth Amendment accrues when [the] taking action occurs.'"  *Navajo Nation*, 631 F.3d at 1273-74 (quoting *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006)).  "The assumption underlying the 'all events' test is that an individual will act with reasonable diligence in the protection of his interests and in so doing, the individual will become aware of acts of another that invade or injure his interests."  *Patton v. United States*, 64 Fed. Cl. 768, 774 (Fed. Cl. 2005).  "However, the claim only accrues if the claimant 'knew or should have known' that the claim existed."  *Goodrich*, 434 F.3d at 1333.

The District argues that the "all events" test was satisfied on the effective date of the Water Street Act whereas Plaintiffs argue that the test was satisfied when the District completed all conditions required under the Act to effectuate the physical closure of Water Street.  The District relies primarily in its reply brief on the United States Supreme Court's decision in *Chippewa Indians of Minnesota v. United States*, 305 U.S. 479 (1939), and the United States Court of Appeals for the Fourth Circuit's ruling in *National Advertising Company v. Raleigh*, 947 F.2d 1158 (4th Cir. 1991), *cert. denied* 504 U.S. 931 (1992), to support its argument that the effective date of the Act is the relevant date for calculating the period under the statute of limitations.  *See* Def. D.C.'s

Reply to Mot. to Dismiss at 3-6.   The Court finds both cases distinguishable for the reasons described herein.[6]

In *Chippewa Indians of Minnesota v. United States*, the Chippewa Indian Tribe ("the Tribe") challenged a Congressional Act of 1908 that created a National Forest on land that the government had held as trustee for the benefit of the Tribe.   305 U.S. at 480.   Pursuant to the Act, the Secretary of the Interior ("the Secretary") was permitted to sell merchantable pine timber on the land.   *Id.*   The Act provided that there was to be an appraisal of the timber "forthwith" and payment to the Tribe of the appraisal value plus payments received from the sale of any timber by the Secretary prior to the appraisal.   *Id.*   Despite the fact that the 1908 Act provided the appraisal should be done "forthwith," the actual appraisal was not completed and approved until 1923.   *Id.* The Supreme Court held that based on the language of the Act, the alleged taking occurred upon the passage of the Act in 1908 rather than upon approval of the appraisal in 1923.   *Id.* at 483. Specifically, the Supreme Court found that the language of the Act made clear that the National Forest was created on the land on the effective date of the Act.   Indeed, the Court noted that there were "repeated declarations referring to the National Forest 'hereby created.'" *Id.* at 482.   As such, the Court explained, "It would have been difficult for Congress to have selected language more clearly expressing the intent and purpose to deprive the Tribe completely – by the Act – of all its

---

[6] The two other cases cited by the District in its reply brief are similarly distinguishable because they do not address the statute of limitations issue as it applies to legislation that did not become effective until certain contingencies were met by the government.   *See generally Gonzalez-Alvarez v. Rivero-Cubano*, 426 F.3d 422 (1st Cir. 2005) (finding that the statute of limitations began to run upon issuance of administrative rulings from the Milk Industry Regulation Office that canceled plaintiff dairy farmers' milk quotas after plaintiffs were convicted of milk adulteration); *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084 (9th Cir. 1991) (finding that the statute of limitations began to run upon the enactment of a rent control ordinance that provided maximum rent for a particular site could not be modified if the tenant sold the mobile home on the property).

remaining beneficial interest in the property." *Id.*  Moreover, the Court noted that while the provision related to the appraisal of the timber indicated that the land was not subject to general laws and regulations governing National Forests until after the appraisal was complete, that provision indicated "no congressional intent to delay the creation of the National Forest." *Id.* at 483.

The facts of the instant action are distinguishable for three reasons.  First, in *Chippewa Indians of Minnesota*, the Tribe's argument was incorrectly premised on the notion that the appraisal of the timber was the triggering act for the statute of limitations when in actuality the case involved the taking of the *land itself*, including the timber on it, for a National Park.  In the instant case, the alleged taking involves the closure of Water Street and all contingencies in the Act cited by Plaintiffs were required to be completed before the street could be closed.  As such, Plaintiffs' argument in the instant action focuses on specific conditions to effectuate the relevant alleged taking whereas the Tribe's argument in the cited case focused on the conditions for compensation after the taking already occurred.  Second, unlike the creation of the National Park in *Chippewa Indians of Minnesota*, the Water Street Act by its very terms did not order the immediate closure of Water Street upon its enactment.  Rather, it required the government to take specific steps to effectuate the closure of the street and if those steps were never taken by the government, presumably the street would never close.  Finally, while the Act in *Chippewa Indians of Minnesota* did not designate a deadline by which the appraisal had to be completed, Congress specified that the action should be taken "forthwith."  Here, the D.C. Council did not provide any timetable for the District to complete negotiations with Hoffman-Struever Waterfront LLC, to finalize the ground lease, to record the ground lease with the Land Records for the District, and to record the Plat with the Surveyor's Office.  The District relies on the language of the Act that the

Council "orders" Water Street closed.  However, the language of the Act also requires additional action from the District before the actual closure of the street was permissible.  Based on these three distinctions, the Court rejects the District's argument that under the reasoning in *Chippewa Indians of Minnesota*, this Court must find that the effective date of the Water Street Act is the date that the statute of limitations began to accrue on Plaintiffs' takings claim.

The District also relies on the Fourth Circuit's opinion in *National Advertising Company* in support of its argument.  In that case, the plaintiff challenged an ordinance enacted by the city of Raleigh that became effective in 1983.  *Nat'l Adver. Co.*, 947 F.2d at 1160-1161.  The ordinance reduced the permissible size and location of certain roadside signage.  *Id.* at 1161.  While the ordinance prohibited the construction of new nonconforming signs, it provided a five-and-a-half-year grace period, starting on October 23, 1983, for existing nonconforming signs to be removed. *Id.*  The Fourth Circuit held that the plaintiff's takings claims were time-barred because the statute of limitations began to run in 1983 upon the enactment of the ordinance and not at the end of the grace period or at the point in time when the plaintiff was notified that it was required to remove nonconforming signs.  *Id.* at 1166.

The Court finds the facts of *National Advertising Company* distinguishable from the facts of the instant action for the reasons described.  Notably, in *National Advertising Company*, the Fourth Circuit held that immediately upon enactment, the ordinance made the signs in question "nonconforming outdoor advertising signs," and provided that the plaintiff must either change or cease use of such signage within the grace period.  *Id.* at 1163.  Moreover, the Fourth Circuit rejected the plaintiff's argument that the taking did not occur until the end of the grace period because the ordinance "permit[ted] the current use of property to continue unhindered."  *Id.* at 1166. Rather, the Fourth Circuit found the ordinance at issue "had a specific and immediate impact

13

on the current use of certain signs . . . [and] mandated that the current and perhaps sole use of twenty of [plaintiff's] nonconforming signs cease within 5 1/2 years, thus having a specific and immediate impact on the primary use of [plaintiff's] property." *Id.*  Notably, in distinguishing the ordinance in *National Advertising Company* from the facts of other cases, the Fourth Circuit noted: "[W]e decide that the injury, which may or may not amount to a taking, occurred when the ordinance was enacted *because its effect was then certain, not contingent*, and because the injury complained of involved a significant interference with the primary use of specific property." *Id.* at 1163 n.3 (emphasis added).  As discussed further *infra*, Plaintiffs' alleged injury in the instant action was contingent upon additional acts undertaken by the government and was not immediate as of the date of the Water Street Act.  As such, the Court does not find the reasoning in *National Advertising Company* applicable to the facts of the instant action.

In its briefing, the District correctly contends that the closure of Water Street is the core of Plaintiffs' takings claim.  However, the District asserts that "the two contingencies cited by Plaintiffs had nothing to do with the closing of Water Street, S.W.—that was accomplished by the passage of the Water Street Act."   Def. D.C.'s Reply to Mot. to Dismiss at 5. Rather, the District argues, "It is the governmental closing of Water Street, S.W., that is the predicate for Plaintiffs' takings claim, and not events connected with the later development of the Water Street Project, such as the signing of the ground leases and the filing of street plats." *Id.* at 5-6.  The Court finds the District's attempt to distinguish the governmental closing of Water Street from the development of the "Water Street Project" unconvincing.

Rather, it is clear from the Act that the two contingencies cited by Plaintiffs were requirements imposed on the District necessary to actually close Water Street.  Indeed, as the District itself acknowledges in its reply brief:

> Once the Council made the decision to close Water Street, *it was necessary for the District to amend an earlier 2009 Amended and Restated Land Disposition Agreement between the District and the Developer Defendants so that they could obtain the necessary financing to develop the project site.* The District and Development Defendants amended the previous LDA by entering into the Southwest Waterfront Third Amendment to the LDA Approval Resolution of 2014.

Def. D.C.'s Reply to Mot. to Dismiss at 2-3 (emphasis added).  Further, the Committee Report indicated that Water Street would "remain in use as before this legislation" until the LDA was complete.  Pls.' Opp'n to Def. D.C.'s Mot. to Dismiss, Ex. A at 4 (Committee Report).  Notably, while the Act appeared to express the Council's intent to *permit* the closure of Water Street, the closure, if any, was contingent on additional government action including action necessary to obtain financing for the project.  Accordingly, the future conditions in the Act were more than mere administrative tasks, but rather imposed substantive requirements on the District.  Indeed, it took the District nearly three years to complete the conditions of the Act and actually close the street.  Moreover, based on the language of the Act, it would have been uncertain on the effective date of the Act when, if ever, the District would fulfill the contingencies.  As such, it was plausible at that time that the District would never meet the required conditions and Water Street would remain open indefinitely.

Based on the language of the Water Street Act, the Court finds that the completion of the future conditions by the District were the final events that fixed the District's liability and it was at that time that the alleged taking occurred.  *See Navajo Nation*, 631 F.3d at 1273.  As such, Plaintiffs' takings claim began to accrue on May 5, 2014, the date that the Plat was recorded with the Surveyor's Office and the ground lease was recorded with the Recorder of Deeds.  Accordingly, the Court concludes that the Plaintiffs' takings claim, first raised in their Complaint filed on July 23, 2015, is not barred under the three-year statute of limitations.

**B.  Provision 38.E of the Parties' Lease Agreements is Ambiguous**

15

The District adopts as alternative basis for dismissing Plaintiffs' takings claim the arguments raised by the Developer Defendants in their motion to dismiss.  Specifically, Defendants allege that the three leases at issue in the instant action terminated on their own terms three years after they were executed and, as such, two of the leases terminated in 2003 and the third lease terminated in 2004.  Developer Defs.' Br. in Supp. of Mot. to Dismiss at 2.  Defendants assert that Plaintiffs' claims should be dismissed in their entirety because Plaintiffs do not have a valid leasehold interest in the property at issue.[7]  Plaintiffs present several alternative theories as bases for the Court to deny Defendants' request for dismissal.  Specifically, Plaintiffs argue that: (1) the unambiguous text of the lease agreements demonstrates that the leases are valid; (2) if the Court concludes that the text of the lease agreements is ambiguous, interpretation of the agreements is a question of fact that should not be decided on a motion to dismiss; or, alternatively, (3) dismissal is inappropriate because of mutual mistake, equitable estoppel, or judicial estoppel.  Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 1-2.  For the reasons described herein, the Court concludes that the language of the lease agreements is ambiguous and, as such, the Court shall deny Defendants' request for dismissal based on the argument that the leases have terminated.

Under D.C. law, leases of real property are analyzed according to the principles of contract law.[8]  *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013).  As such, leases are interpreted

---

[7] In their opposition, Plaintiffs note that two counts in the Complaint alleged against Developer Defendants, unjust enrichment and tortious interference with prospective business relationships, are not premised on a valid leasehold interest and, as such, should not be dismissed should the Court otherwise grant the Developer Defendants' motion. Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 23-24. Developer Defendants do not address this argument in their reply. *See generally* Developer Defs.' Reply to Mot. to Dismiss.  However, the Court need not address this issue because the Court finds that the motion to dismiss should be denied.

[8] The lease agreements provide: "This Lease shall be governed by and construed in accordance with the laws of the District of Columbia."  Compl., Ex. A at 26; *id.*, Ex. C at 24; *id.*, Ex. D at 34.

under the "objective law of contracts." *Id.* at 888. "This means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake.'" *Joyner v. Estate of Johnson*, 36 A.3d 851, 855 (D.C. 2012) (quoting *Dyer v. Bilaal*, 983 A.2d 349, 354-55 (D.C. 2009)). "Thus, '[i]f a [contract] is unambiguous, the court's role is limited to applying the meaning of the words . . . but if it is ambiguous, the parties' intention is to be ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction.'" *Id.* at 856 (quoting *Found. for the Pres. of Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C. 1994)). "'[A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.'" *Id.* (quoting *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000)). "A contract is not ambiguous simply because the parties disagree on its interpretation . . . ." *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1034 (D.C. Cir. 1973). Instead, "'[t]he question of whether a contract is ambiguous is one of law to be determined by the court.'" *Joyner*, 36 A.3d at 856 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983)).

The parties' lease agreements contemplate two distinct time periods in the lease, one occurring prior to the completion of the "Landlord's Work" and one commencing upon completion

of the "Landlord's Work."[9]  *See* Compl., Ex. A at 4-5, ECF No. [17-1] (Lease Agmt. between D.C.

and The Wharf); *id.*, Ex. C at 4-5, ECF No. [17-3] (Lease Agmt. between D.C. and Captain White);

*id.*, Ex. D at 14-15, ECF No. [17-4] (Lease Agmt. between D.C. and Pruitt's Seafood, Inc.).

Specifically, the leases set annual minimum rent "Before New Rent Commencement Date" and

the annual minimum rent "After New Rent Commencement Date."  *Id.*, Ex. A at 4-5; *id.*, Ex. C at

4-5; *id.*, Ex. D at 14-15.  The "New Rent Commencement Date" is the date upon which the

"Landlord's Work" is substantially completed, as signaled by the receipt of a Certificate of

Substantial Completion from the Corps of Engineers.  *Id.*, Ex. A at 5; *id.*, Ex. C at 5; *id.*, Ex. D at

15.  The "Landwork's Work" is defined in the lease agreements as certain improvements that the

parties agree should be made to the Municipal Fish Wharf with $3,000,000 appropriated from the

federal government and from other sources of funding available to the landlord.  *Id.*, Ex. A at 8-9;

*id.*, Ex. C at 8; *id.*, Ex. D at 17-18.  Notably, the lease agreements provide:

> Landlord shall use reasonable commercial efforts to complete Landlord's Work by
> June 30, 2001, *but shall have no liability to Tenant if it is unable to complete
> Landlord's Work by that date or by any other date.*  Within five (5) days after the
> New Rent Commencement Date, Tenant shall execute and deliver to Landlord a
> Certificate of Acceptance, in the form attached hereto . . .

*Id.*, Ex. A at 9 (emphasis added); *id.*, Ex. C at 8 (emphasis added); *id.*, Ex. D at 18 (emphasis

added).  As such, the lease agreements do not impose a date certain by which the Landlord's Work

must be complete.  In the instant action, the parties agree that the Landlord's Work has not been

completed at this time.  Compl. ¶ 89; Developer Defs.' Br. in Supp. of Mot. to Dismiss at 4, 6;

Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 16.

---

[9] With respect to Plaintiff Salt Water, Defendants argue that the lease terminated before it
was assigned to Salt Water.  Developer Defs.' Reply to Mot. to Dismiss at 4-5.  As such, the Court
shall examine the terms of the original lease between the District and Pruitt's Seafood, Inc., that
was ultimately assigned to Salt Water.

In light of the fact that the Landlord's Work has not been completed, Defendants allege that the leases terminated pursuant to Provision 38.E that provides:

> **Rule Against Perpetuities.** Notwithstanding any provision in this Lease to the contrary, if the Lease Term has not commenced within three (3) years after the date of this Lease, this Lease shall automatically terminate on the third (3rd) anniversary of the date hereof. The sole purpose of this provision is to avoid any possible interpretation that this Lease violates the Rule Against Perpetuities or other rule of law against restraints on alienation.

Compl., Ex. A at 26; *id.*, Ex. C at 24; *id.*, Ex. D at 34.   Defendants argue that the unambiguous language of this provision provides that the leases would terminate if after three years of the date of their execution, the New Rent Commencement Date had not been triggered by the completion of the Landlord's Work.   Developer Defs.' Br. in Supp. of Mot. to Dismiss at 6; Developer Defs.' Reply to Mot. to Dismiss at 2.   Plaintiffs reject this interpretation and contend that the plain text of the provision provides only that the lease would terminate if the "Lease Term," or the date of the lease agreement, had not commenced within three years.   Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 11-12.   In the alternative, Plaintiffs argue that Defendants at most have demonstrated that the text of the lease agreements is ambiguous and, as such, the issue should not be resolved through a motion to dismiss.   *Id.* at 14.

The Court must first determine whether the text of the provision is ambiguous.   As such, "'[t]he issue [before the court], . . . is whether the language that has so sharply divided the parties is, in truth, *reasonably* susceptible of different construction or interpretations.'"   *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 793 F.2d 356, 359 (D.C. Cir. 1986) (emphasis added).   The Court first turns to Plaintiffs' interpretation of Provision 38.E.   Plaintiffs argue that while "Lease Term" is not defined, "Lease" is used in the agreements to reference "this Lease Agreement."   Compl., Ex. A at 4; *id.*, Ex. C at 4; *id.*, Ex. D at 14.   Further, "Term" is defined in the lease agreements as "[t]he period that begins on the Commencement Date and ends thirty (30) Lease

Years after the New Rent Commencement Date, unless sooner terminated pursuant to this Lease." *Id.*, Ex. A at 7; *id.*, Ex. C at 6; *id.*, Ex. D at 16.  Moreover, "Commencement Date" is defined as "[t]he date of this lease."  *Id.*, Ex. A at 4; *id.*, Ex. C at 4; *id.*, Ex. D at 14.  As such, Plaintiffs argue each "Lease Term" within the meaning of Provision 38.E commenced on the date of each lease and, as such, the three commencement dates fall within the three-year window of Provision 38.E. *See* Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 12-13.

The Court next turns to Defendants' interpretation of Provision 38.E.  Defendants argue that "[t]he only thing the 'Lease Term' can mean in this context is the 30-year period referred to in the definition of 'Term' . . . ."  Developer Defs.' Reply to Mot. to Dismiss at 2.  As such, Defendants argue that the "Commencement Date" in general is the date of the lease and use of "Lease Term" in Provision 38.E references the "New Rent Commencement Date."  *Id.*  The Court finds that both parties have presented fair interpretations of Provision 38.E in light of the language in the Provision and the lease agreements as a whole.  As such, the Court concludes that the language of Provision 38.E is ambiguous because it is both reasonably and fairly susceptible of different interpretations.

In order to determine the appropriate interpretation of the ambiguous provision, the Court must examine the parties' intention in light of the circumstances surrounding their execution of the agreements and/or by applying rules of construction.  Indeed, "interpretation of ambiguous contract language, particularly if it requires consideration of extrinsic evidence, is a question of fact . . . ."  *Flynn v. Dick Corp.*, 481 F.3d 824, 831 n.7 (D.C. Cir. 2007).  As such, the Court declines to interpret Provision 38.E at this early stage of the proceedings. However, the Court finds on this record that Plaintiffs have alleged facts sufficient to support their claim that they have valid leasehold interests in the property at issue.  *See, e.g., Scowcroft Group, Inc. v. Toreador Resources*

*Corp.*, 666 F. Supp. 2d 39, 43-44 (D.D.C. 2009) (denying a motion to dismiss when a contract was found to be ambiguous).   Accordingly, the Court shall deny Defendants' request for a dismissal based on their argument that Plaintiffs' lease agreements have terminated.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs' Fifth Amendment Takings Clause claim is not barred by the statute of limitations because the time under the statute of limitations began to accrue when the District of Columbia satisfied all the future conditions in the Water Street Act.   Moreover, the Court concludes that the language of Provision 38.E of the parties' lease agreements is ambiguous and at this stage in the proceedings, Plaintiffs have alleged facts sufficient to support their claim that they have valid leasehold interests in the property at issue.   Accordingly, the Court DENIES Developer Defendants' [20] Motion to Dismiss Plaintiffs' First Amended Complaint and DENIES the Defendant District's [25] Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.


_____
/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge