# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WHARF, INC., *et al.*,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al.*.,

      Defendants.

Civil Action No. 15-1198 (CKK)

## MEMORANDUM OPINION
(September 28, 2015)

Plaintiffs filed suit on July 23, 2015, against the District of Columbia ("District") as well as Hoffman-Madison Waterfront, LLC and Wharf Horizontal Reit Leaseholder, LLC ("Developer Defendants"). Plaintiffs allege that the Developer Defendants violated the terms of the parties' lease agreements, and that the District violated the Takings Clause of the Fifth Amendment by impeding access to the leased property.  Presently before the Court is Plaintiffs' [18] Motion for Preliminary Injunction.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court DENIES Plaintiffs' [18] Motion for Preliminary Injunction.

## I. BACKGROUND

---

[1] Pls.' Mot. for Preliminary Injunction ("Pls.' PI"), ECF No. [18]; Defs.' Hoffman-Madison Waterfront LLC & Wharf Horizontal Reit Leaseholder LLC's Br. in Opp'n to Pls.' Mot. for Preliminary Injunction ("Developer Defs.' Opp'n to Pls.' PI"), ECF No. [30]; Pls.' Reply to Defs.' Br. in Opp'n to Pls.' Mot. for PI ("Pls.' Reply to PI"), ECF No. [38]; Notice by Def. D.C. Regarding Rental Payments Made by Pls. to D.C., ECF No. [41]; Pls.' Notice of Errata & Corrected Exs., ECF No. [42].  In an exercise of its discretion, the Court finds that holding oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f), 65.1(d).

This case concerns the Municipal Fish Market located at 1100 Maine Avenue, S.W., Washington, D.C. ("Municipal Fish Market" or "the Market"). Compl. ¶ 1. Plaintiffs, Wharf, Inc. ("The Wharf"), BRW, Inc. ("Captain White"), and Salt Water Seafood, Inc. ("Salt Water"), run three seafood businesses in the Municipal Fish Market and bring this action as lessees of property located within the Market. *Id.* ¶ 2. Each of the Plaintiffs' businesses is owned and operated by members of the White family. *Id.* ¶ 34. Defendants are the District of Columbia ("the District"), the original lessor of the property at issue, and Hoffman-Madison Waterfront, LLC and Wharf Horizontal Reit Leaseholder, LLC ("Developer Defendants"), the private entities to which the District assigned its rights to the leases in question in 2014. *Id.* ¶¶ 1, 44.

The commercial leases at issue are: the agreement entered into by The Wharf and the District dated July 12, 2000, *id.* ¶ 35; the agreement entered into by Captain White and the District dated July 12, 2000, *id.* ¶ 37; and the agreement originally entered into by Pruitt's Seafood, Inc., and the District dated April 1, 2001, and subsequently assumed by Salt Water (then doing business as W.D., Inc.) from DNM Seafood, Inc. on March 20, 2014, with the consent of then-lessor, the District, *id.* ¶ 40, Ex. D. The term of the lease agreements at issue is defined as "[t]he period that begins on the Commencement Date and ends thirty (30) Lease Years after the New Rent Commencement Date, unless sooner terminated pursuant to this Lease."[2] *Id.*, Ex. A at 7; *id.*, Ex. C at 6; *id.*, Ex. D at 16.[3] On April 23, 2014, the District assigned the leases at issue to Developer Defendants. *Id.* ¶ 44. Plaintiffs allege that Developer Defendants breached the terms of their lease agreements and otherwise interfered with their use of the leased property. *See generally id.* ¶¶ 91-

---

[2] A court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint." *See, e.g., Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

[3] Page numbers for exhibits attached to the Complaint refer to the numbers automatically assigned to the documents as they were filed in ECF.

160.  Plaintiffs also bring a Fifth Amendment Takings Clause claim (Count I) against the District of Columbia.  However, Plaintiffs only seek a preliminary injunction against the Developer Defendants and not against the District.

Plaintiffs seek a preliminary injunction against Developer Defendants based on the alleged breach of the parties' lease agreements.  Specifically, Plaintiffs seek an injunction from the Court ordering Developer Defendants to: (1) cease further construction and encroachments onto the Common Area of the Municipal Fish Market without meeting the conditions precedent in the Lease Agreements; and (2) to leave Plaintiffs to quietly enjoy their leased property by ending their wrongful efforts to evict Plaintiffs through proceedings in the Superior Court of the District of Columbia and otherwise harass Plaintiffs.  Pls.' Mem. in Supp. of PI at 11.  Moreover, Plaintiffs request that this Court stay the pending eviction proceedings in D.C. Superior Court.  *Id.*

## II. LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008).  A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an injunction would be in the public interest.  *Id.* at 20.  "The four factors have typically been evaluated on a 'sliding scale.'"  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291, (D.C. Cir. 2009). Under this sliding scale, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

"It is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits." *Barton v. District of Columbia*, 131 F. Supp. 2d 236, 242 (D.D.C. 2001)

(citing *Benten v. Kessler*, 505 U.S. 1084, 1085 (1992)).  If the movant fails to do so, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone. *See Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir. 1992) (affirming denial of preliminary injunction where the district court properly concluded that the plaintiff had "no likelihood of success on the merits"); *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) ("[A]lthough we apply a four-factor test in weighing a request for a preliminary injunction, such relief never will be granted unless a claimant can demonstrate 'a fair ground for litigation.'") (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("Given the inadequacy of [plaintiff]'s prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief."), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995). In addition, the movant must establish that irreparable injury is likely, "not just a possibility." *Winter*, 555 U.S. at 21.

Historically, these four factors have been evaluated on a "sliding scale" in this Circuit, such that a stronger showing on one factor could make up for a weaker showing on another. See *Davenport v. Int'l Bhd. of Teamsters, AFL–CIO*, 166 F.3d 356, 360-61 (D.C. Cir. 1999). The continued viability of that approach has recently been called into some doubt, as the United States Court of Appeals for the District of Columbia Circuit has suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *Davis v. PBGC*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). However, absent binding authority or clear guidance from the Court of Appeals, the Court considers the most prudent course to bypass this unresolved issue and proceed to explain why a preliminary injunction in this case is not appropriate under the "sliding

scale" framework. If a plaintiff cannot meet the less demanding "sliding scale" standard, then it certainly could not satisfy the more stringent standard alluded to by the Court of Appeals.

## III. DISCUSSION

### A.  Likelihood of Success on the Merits

As Plaintiffs explain in their briefing, their request for a preliminary injunction is premised solely on Developer Defendants' alleged breaches of the parties' lease agreements.  Pls.' Mem. in Supp. of PI at 13-14, 14 n.14.  As such, Plaintiffs must demonstrate that they are likely to succeed on their merits of their breach of contract claims.  *See id.*  In order to prevail on a breach of contract claim under D.C. law,[4]  Plaintiffs must establish: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  Here, Plaintiffs have failed to establish a *substantial* likelihood of success on the merits of their breach of contract claims because: the Court has left open the issue of whether valid contracts exist between the parties; and, even if the Court finds that the contracts are enforceable, it is unclear whether the conduct constitutes current or potential future breaches of the parties' agreements.

Defendants in the instant action sought dismissal of all of Plaintiffs' claims on the basis that Plaintiffs' leases had terminated.  *See* Developer Defs.' Br. in Supp. of Mot. to Dismiss at 2, ECF No. [20-1]; Def. D.C.'s Memo. in Supp. of Mot. to Dismiss at 6, ECF No. [25-1].  In rendering its decision on those motions in a separate opinion, the Court examined the language of the provision at issue and ultimately found that it was ambiguous.  *See generally* Memo. Op. (Sept. 28, 2015) at 15-21, ECF No. [45].  Notably, the Court found that "both parties have presented fair

---

[4] The lease agreements provide: "This Lease shall be governed by and construed in accordance with the laws of the District of Columbia."  Compl., Ex. A at 26; *id.*, Ex. C at 24; *id.*, Ex. D at 34.

interpretations of Provision 38.E in light of the language in the Provision and the lease agreements as a whole." *Id.* at 20.  The Court concluded that interpretation of ambiguous contract language is a question of fact.  As such, the Court declined to interpret the provision during the motion to dismiss stage and instead determined that the issue would be best decided on an expanded factual record.[5]  *Id.* at 20-21.  In so ruling, the Court left open the issue of whether Plaintiffs have valid leasehold interests in the property at issue until the factual record in this action is further developed.  Relatedly, the Court has not yet addressed the merits of either party's arguments regarding the alleged breaches of the lease agreements or Plaintiffs' argument that if the leases have terminated, then the Court should apply certain equitable principles.  In sum, the Court's only holding at this time with respect to the parties' lease agreements is that the language of Provision 38.E is ambiguous.

Indeed, while at this juncture the Court found that the Plaintiffs' argument regarding the validity of the leases based on their interpretation of the provision had merit, the Court also found that Defendants advanced a conflicting interpretation that also had merit.  In light of this holding and without the benefit of a more complete factual record, the Court cannot conclude which party is *substantially* likely to succeed with respect to the validity of the lease at this time.  Moreover, the Court cannot conclude that Plaintiffs are substantially likely to prevail on their breach of contract claims against Defendants because Plaintiffs can only succeed on these claims if they have a legally enforceable interest in the property.

---

[5] In their Opposition to Developer Defendant's Motion to Dismiss, Plaintiffs argued that "Developer Defendants' Motion, at most, identifies an ambiguity in the contracts as to their duration. Because ambiguities in a contract cannot be resolved through a motion to dismiss, the Motion should be denied." Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 14.  After finding the lease provisions were ambiguous, the Court denied Defendants' motions to dismiss as requested by Plaintiffs based on the ambiguity.  *See id.* (arguing the Court should conclude its inquiry at this stage if it found the leases were ambiguous).

Further, even if Plaintiffs prevail and the Court finds that the leases are enforceable, Plaintiffs have not established a substantial likelihood of success on the breach claims. Indeed, the parties dispute what conditions, if any, must be met before Developer Defendants can engage in construction in the Common Area under the provisions of the lease. *See* Pls.' Mem. in Supp. of PI at 16-19; Developer Defs.' Opp'n to PI at 21-22. Plaintiffs have advanced an argument that has merit regarding Developer Defendants' obligations under the lease, but Defendants have also raised a colorable claim. As such, it remains an open issue whether Developer Defendants must meet certain conditions before engaging in construction in the Common Area should the Court find that the leases are enforceable. Here, the Court concludes that neither party has demonstrated the better of this argument based on the record before the Court at this time. Accordingly, the Court finds that Plaintiffs have not demonstrated that even if the leases are valid, that the conduct at issue demonstrates a breach or potential future breach to the leases.

For the reasons described, the Court concludes based on the record before it that Plaintiffs have not demonstrated a *substantial* likelihood that they will succeed on the merits of their breach of contract claims. Nevertheless, because Plaintiffs have advanced a colorable claim that they have valid leases, the Court shall proceed to Plaintiffs' arguments regarding the three other requirements for granting a preliminary injunction. *See RCM Techs., Inc. v. Beacon Hill Staffing Group*, LLC, 502 F. Supp. 2d 70, 73 (D.D.C. 2007) ("A showing of substantial likelihood of success is especially important, and it would take a very strong showing on the other factors to overcome a failure to demonstrate a substantial likelihood of success on the merits.").

### B. Irreparable Harm

In their briefing, each party casts a wide net in citing to alleged wrongful conduct by the other party. However, the Court shall limit its discussion to the gravamen of their argument with

respect to Plaintiffs' claim that they will be irreparably harmed if the Court denies them injunctive relief. Specifically, Plaintiffs argue that they will suffer irreparable harm in the absence of preliminary relief in two ways. First, Plaintiffs allege that Developer Defendants are attempting to wrongfully evict The Wharf and Salt Water through pending proceedings in the Landlord-Tenant Branch of the Superior Court of the District of Columbia. Pls.' Mem. in Supp. of PI at 24. Second, Plaintiffs allege that Developer Defendants have revealed plans to engage in further construction within the Common Area of the Municipal Fish Market that would result in substantial business losses to Plaintiffs and threaten the existence of their businesses. *Id.* For the reasons described, the Court finds that the Plaintiffs have failed to establish that they will suffer irreparable harm if this Court denies their request for a preliminary injunction.

First, Plaintiffs argue that wrongful eviction constitutes irreparable injury as a matter of law. *See* Pls.' Mem. in Supp. of PI at 24 (citing *Brown v. Artery Org., Inc.*, 691 F. Supp. 1459, 1461 (D.D.C. 1987)). Here, however, as Defendants point out, Plaintiffs are not subject to *wrongful* eviction should this Court deny their request for preliminary relief, including the request to stay the eviction proceedings. *See* Developer Defs.' Opp'n to Pls.' PI at 18-19. Defendants initiated eviction proceedings in D.C. Superior Court against Plaintiffs The Wharf and Salt Water[6] on August 6, 2015.[7] Notably, the "Verified Complaint for Possession of Real Property" filed in both of those actions alleged that each Plaintiff breached the terms of the lease agreement, but do not seek eviction on the basis that Plaintiff is "holding over after expiration of the lease" or on the basis that Plaintiff "is not a tenant and has no legal right to occupy the premises." Pls.' 1st Request

---

[6] Eviction proceedings do not appear to be pending against Plaintiff Captain White.

[7] Pursuant to this Court's Order of August 13, 2015, the parties waived an abbreviated briefing schedule on the instant motion contingent upon Developer Defendants deferring eviction proceedings pending in D.C. Superior Court until this Court resolved the pending motion on an expedited basis. Order (Aug. 13, 2015) at 1, ECF No. [22].

for Jud. Notice, Ex. D at 4, ECF No. [27-4] (Compl. Against The Wharf, D.C. Superior Court); *id.* at 12 (Compl. Against Salt Water, D.C. Superior Court).[8]   As such, it appears Developer Defendants have not argued in those proceedings that the leases have terminated and the only issue presently before the D.C. Superior Court is whether Developer Defendants may evict two of the Plaintiffs based on their alleged breaches under the lease agreement.[9]   As such, Plaintiffs have failed to demonstrate how they may be wrongfully evicted if the Court does not stay those proceedings.   Instead, it appears that Plaintiffs may only be evicted if the D.C. Superior Court determines that Plaintiffs are in breach of their agreements.   Plaintiffs have advanced no argument as to why this Court, rather than the D.C. Superior Court is better suited to address the issue of whether Plaintiffs are in breach of their lease agreements.

Plaintiffs argue that "courts routinely enjoin such proceedings in cases like this one where misconduct by the party seeking an eviction has given rise to numerous equitable defenses—here equitable estoppel, judicial estoppel, mutual mistake, and waiver by acceptance of rent—that Landlord Tenant Court is powerless to adjudicate."  Pls.' Reply to PI at 19.  Plaintiffs then cite in a footnote to their Opposition to the Developer Defendants' Motion to Dismiss outlining their arguments that if the Court determined that the parties' leases had terminated, the Court should consider equitable principles to determine that Plaintiffs still have an enforceable interest in the property at issue.  *See id.* at 19 n.15 (citing Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 14-23, ECF No. [26]).  However, Plaintiffs' cite the arguments that only address the issue of whether the Court should apply equitable principles when considering whether Plaintiffs have a valid

---

[8] The Court previously took judicial notice of the court filings related to the eviction proceedings. *See* Memo. Op. (Sept. 28, 2015) at 2 n.2, ECF No. [45].

[9] Plaintiffs acknowledge in their Opposition to Developer Defendants' motion to dismiss that Defendants have not sought eviction in D.C. Superior Court on the basis that the leases are terminated.   Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 22-23.

interest in the property *if the Court finds that the leases have terminated*.  Accordingly, Plaintiffs only reference arguments about the validity of the lease agreements. Plaintiffs do not raise any arguments regarding equitable principles that are related to the sole issue in the eviction proceedings in D.C. Superior Court—whether Plaintiffs breached the lease agreements.  *See generally* Pls.' Opp'n to Developer Defs.' Mot. to Dismiss at 14-23.  As such, Plaintiffs have not raised defenses related to the alleged breaches in their briefing that they could raise before this Court but would be precluded from raising during the eviction proceedings in D.C. Superior Court.

Plaintiffs for the first time in their reply brief argue that they will be precluded from raising the argument that Developer Defendants' waived their alleged breaches by accepting rent in the D.C. Superior Court cases.  Pls.' Reply to PI at 19 n.15 (citing *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1163 (D.C. 1985)).  The issue of the waiver of the alleged breaches of the lease by acceptance of rent was raised for the first time in the reply brief and is forfeited because it leaves Defendants with no opportunity to respond. *See, e.g., McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [a defendant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013) (forfeiting an argument made for the first time in a reply brief). Moreover, the Court notes that any such argument would be based on the fact that Developer Defendants accepted rent from Plaintiffs even though they were aware that Plaintiffs were in breach of the lease agreements.  During briefing on this issue, Developer Defendants contended that Plaintiffs were in breach because they had failed to pay rent.  Developer Defs.' Opp'n to PI at 6.  Plaintiffs in their reply brief asserted that they had not been given notice where to transmit rent when Developer Defendants were assigned the lease and, accordingly, continued to pay rent to the

District.  Pls.' Reply to PI at 1.  On September 21, 2015, the District filed notice with the Court

that it was in the process of transmitting the rent payments to Developer Defendants.  *See* Notice

by Def. D.C. Regarding Rental Payments Made by Pls. to D.C., ECF No. [41].  Accordingly, it

appears to the Court that Plaintiffs are missing a factual predicate for the argument that Developer

Defendants waived the alleged breaches of the lease by accepting rent since Plaintiffs were not

paying rent directly to Developer Defendants.

   In addition, while Plaintiffs argue courts "routinely" grant the requested injunctive relief,

Plaintiffs have cited no statutory or precedential authority that would permit this Court to either

stay the proceedings in D.C. Superior Court or enjoin Developer Defendants from continuing to

litigate the pending actions in D.C. Superior Court.[10]  Instead, Plaintiffs' support their request by

citing to cases that either may not be cited as precedent or are not binding authority on this Court.

*See* Pls.' Mem. in Supp. of PI at 11 n.12; Pls.' Reply to PI at 18-20.  Plaintiffs primarily rely on

an unpublished opinion issued in 1990 by another court in this district which cannot be cited as

precedent and which is distinguishable.[11]  *See* D.C. Cir. R. 32.1(b).  In *Lattimore v. Northwest*

---

[10] While Plaintiffs contend that the Anti-Injunction Act, codified as 28 U.S.C. § 2283, is not applicable in the instant action because this Court seized jurisdiction, neither party has fully briefed this issue. Pls.' Mem. in Supp. of PI at 11 n.12.  However, other courts considering the issue have found that the Anti-Injunction Act is not jurisdictional, but rather restricts this Court's remedial authority.  *See, e.g., Trs. of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 807 n.2 (7th Cir. 2012); *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 818 (8th Cir. 2009).  As such, the Court shall not further expound on this issue because it concludes that preliminary injunctive relief is not warranted for other reasons; because the issue has not been fully addressed by either party; and because the Court is issuing this ruling on an expedited basis.  *See also Thomas v. Powell*, 247 F.3d 260, 261 (D.C. Cir. 2001) (expressly "assum[ing], without deciding, that the District of Columbia is a 'State' within § 2283's meaning"); *United States v. Mills*, 964 F.2d 1186, 1198 (D.C. Cir. 1992) ("Congress has not . . . plainly extended the prohibition upon the issuance of federal injunctions staying state court proceedings, *see* 28 U.S.C. § 2283, to District proceedings.").

[11] Plaintiffs also cite to two district court cases outside this jurisdiction that are not persuasive as to Plaintiffs' position in this case. Pls.' Reply to PI at 18.  Notably, in one of those cases, the district court based its decision to enjoin state court proceedings upon a showing that

*Cooperative Homes Association*, No. 90–0049, 1990 WL 10521534 (D.D.C. Mar. 26, 1990), the district court enjoined the defendants from instituting or continuing any eviction proceedings in D.C. Superior Court pending resolution of the case or upon further order of the court.  *Id.* at *7. The court enjoined the defendants because D.C. Superior Court could not consider "the heart of plaintiff's case," which required the court to consider equitable defenses including the plaintiff's argument, which was supported by the government, that she was improperly deemed ineligible for Section 8 housing benefits.  *Id.* at *5.  Here, Plaintiffs have advanced no argument that a decision in D.C. Superior Court would address or interfere with this Court reaching "the heart" of their case against Developer Defendants in this action, i.e., that they have valid, enforceable lease interests in the property and that Developer Defendants are in breach of those agreements.  The Court further notes that it appears Plaintiffs' sole federal claim, which is brought against the District and related to the closure of Water Street, would be unaffected by any D.C. Superior Court ruling on the issue of Plaintiffs' alleged breaches other than potentially limiting the duration of time for which Plaintiffs could seek relief.  As such, the Court concludes that Plaintiffs have failed to show that they would suffer irreparable harm if this Court does not stay the eviction proceedings in D.C. Superior Court or enjoin Developer Defendants from proceeding in that court.

---

the plaintiffs would not be able to raise their federal claims as a defense in the eviction proceedings. *See Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) (finding "Plaintiffs have met their burden of showing that they cannot assert their federal disability claims in the pending state court eviction proceeding").  In the other unpublished decision from 1985 cited by Plaintiffs, the district court declined to grant the request for preliminary injunction, finding that the state eviction proceeding provided an adequate forum for the issues raised by plaintiff because the U.S. Court of the Appeals for the Seventh Circuit held that a tenant may raise equitable defenses, such a civil rights violations. *Miller v. East Lake Mgmt.*, No. 85-C-5280, 1985 WL 2932, at *3 (N.D. Ill. Oct. 2, 1985).  Here, Plaintiffs have failed to assert any specific defenses they would be precluded from raising during the eviction proceedings in D.C. Superior Court that they would be able to raise in this Court.

Turning to their second argument, Plaintiffs allege that they will be harmed if the Court does not enjoin Developer Defendants from engaging in future construction.  In their original motion, Plaintiffs argue that Developer Defendants have revealed plans to engage in further construction in the Common Area, including plans to build large retail structures, and that these plans will result in substantial business losses to Plaintiffs and will threaten the existence of their businesses.  Pls.' Mem. in Supp. of PI at 24.  However, in their reply brief, Plaintiffs appear to narrow the grounds of the requested relief, asserting that they have demonstrated irreparable harm by showing "actual losses that are already occurring (. . . which threaten the existence of Plaintiffs' businesses.)," rather than future losses.  Pls.' Reply to PI at 16.  The Court shall address each argument in turn.

In support of their argument, Plaintiffs provide two affidavits from customers indicating that they patronize the Market less frequently due to access and parking issues, and e-mails and a letter from two vendors indicating difficulty making deliveries to Plaintiffs due to access issues. Pls.' PI, Ex. U (Cole Declaration); *id.*, Ex. V (Phillips Declaration); *id.*, Ex. W (Letter from Am. Seafoods, Inc.); *id.*, Ex. X (E-mails from Sysco).  In response, Developer Defendants allege that Plaintiffs' grievance regarding access to the facility is premised on the closure of Water Street that was completed pursuant to a statute.[12]  Developer Defs.' Opp'n to PI at 8.  Developer Defendants also explain that they intend to build a new intersection with access to the Fish Market from Maine Avenue.  *Id.*  However, before the completion of the new intersection, Developer Defendants created a temporary access point to the Fish Market.  *Id.*  Notably, Developer Defendants assert

---

[12] The Court notes that any alleged injury Plaintiffs have suffered as a result of the closure of Water Street may be recoverable through its Takings Clause claim against the District in the instant action.

and Plaintiffs do not contest in their reply brief that "[t]here was never a time when access to the Fish Market was entirely barred." *Id.*

With respect to parking, it is undisputed that Developer Defendants installed bollards that blocked two piers and, in doing so, eliminated some parking.  In their opposition, Developer Defendants assert that these parking spots are the only ones that they eliminated and that they did so because engineering reports questioned the structural integrity of the use of the piers for parking.[13]  Developer Defs.' Opp'n to PI at 9-10.  In a footnote in their reply brief, Plaintiffs question whether the reports cited by Developer Defendants support the blocking of all but the southernmost 30 feet of one pier.  Pls.' Reply to PI at 10 n.6.  Moreover, Plaintiffs object to Developer Defendants posting signage in the parking lot limiting parking to 60 minutes.  Pls.' Mem. in Supp. of PI at 7.  Indeed, it appears there is a dispute among the parties as to whether employees and vendors may use the parking lot and, more generally, who may regulate parking in the parking lot.  *Id.*; Developer Defs.' Opp'n to PI at 9.

After considering the evidence before it, the Court finds that Plaintiffs have not set forth a sufficient basis for the Court to conclude that they will suffer irreparable harm if an injunction is not imposed.  "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Id.*  "In analyzing when a harm is irreparable in the context of economic harms, the movant must show that the harm would threaten

---

[13] Developer Defendants also allege that they reserved an entire level of parking in a nearby structure for customers, and provided a lot for Fish Market Tenants and commercial vehicles. Developer Defs.' Opp'n to PI at 10.

the existence of its business or that the moneys lost as a result of the lack of a stay would be unrecoverable." *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt,* 704 F. Supp. 2d 50, 52 (D.D.C. 2010) (citing *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Indeed, while it does appear that the access point to the property at issue has been changed, Plaintiffs' evidence does not rise to the level of demonstrating that Plaintiffs will likely be driven out of business if the Court does not grant a preliminary injunction. Indeed, it is uncontroverted that access to the property at issue has never been completely blocked and that customer parking has been and continues to be available. Rather, at best, Plaintiffs have shown that they have suffered and would continue to suffer some economic harm in the form of lost customers and vendors based on Developer Defendants' change to the access points and the reduction of the number of parking spots. Importantly, however, Plaintiffs have not demonstrated how any economic losses on this basis would be *irreparable*. Instead, Plaintiffs allege mere "economic injuries that are generally . . . reparable with monetary damages in the ordinary course of litigation." *Air Transport Assn of Am., Inc. v. Export-Import Bank of U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012). Indeed, if Plaintiffs were to prevail, Plaintiffs have not alleged economic damages based on loss of customers or vendors that would be unrecoverable.

Moreover, Defendants have represented to the Court that part of the construction Plaintiffs seek to enjoin will include a new dedicated intersection on Maine Avenue that will facilitate access to the Municipal Fish Market and a twelvefold increase in patron parking. Developer Defs.' Opp'n to PI at 12-13. Plaintiffs have failed to demonstrate how enjoining Developer Defendants from completing construction to the entry and exit points and expanding customer parking would ultimately cause them less injury. As a practical matter, it does not appear halting construction

would rectify Plaintiffs' grievance as to the access and parking issues.  Instead, at most, Plaintiffs have shown that the ongoing construction has caused them some economic loss that they may recover through the instant action.[14]

Finally, while it appears that Plaintiffs have abandoned their argument with respect to Developer Defendants' future construction of buildings in the Common Area as argued in their original motion, the Court shall address it in the interest of completeness.  Plaintiffs allege that Developer Defendants have revealed plans to engage in further construction within the Common Area of the Municipal Fish Market that would result in substantial business losses to Plaintiffs and threaten the existence of their businesses.  In support of this argument, Plaintiffs also point to three sets of plans for the Common Area.  Pls.' PI, Ex. I (Common Area Plans, May 2014); *id.*, Ex. J (Common Area Plans, Aug. 2014); *id.*, Ex L (Phase Plans, Jul. 2014 to 2017).   Developer Defendants do not rebut this allegation and instead assert that any planned changes to the Common Area will improve the Fish Market.  Defs.' Opp'n to PI at 12-13.  Moreover, Developer Defendant provided an affidavit from Matthew L. Steenhoek, the Associate Project Director of the development project at issue, which details the plans for the Common Area.  *Id.*, Ex. A ¶¶ 33-42 (Steenhoek Declaration).   Plaintiffs assert that an injunction is appropriate because "[o]nce built . . . the[] structures on the Common Area will be irreversible."  Pls.' Mem. in Supp. of PI at 25.

---

[14] In their reply brief, Plaintiffs assert that the facts of this case are similar to those in *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 909 (1st Cir. 1989). Pls.' Reply to PI at 21-22. In that case, the U.S. Court of Appeals for the First Circuit affirmed a district court's grant of injunctive relief, finding irreparable harm based in part on the loss of revenues resulting from diminished visibility, restricted access, and less parking where a long-term tenant objected to the construction of additional buildings within the parking lot in violation of the parties' lease agreement. *K-Mart*, 875 F.2d at 915.  In the cited case, the district court determined on the merits that the new construction breached of the lease.  *Id.* at 910. The facts of the instant action are distinguishable because in the instant action, the construction at issue may result in changes that actually remedy some of the issues cited by Plaintiffs, including improved access and increased parking.

Here, Plaintiffs have made no specific allegations whatsoever as to how the proposed construction of buildings in the Common Area will harm them economically.  Rather, Plaintiffs appear to simply contend that this construction would be a breach of the parties' lease agreements.  However, that fact that this is an alleged breach is simply insufficient when Plaintiffs do not point to any nexus between the planned construction of these buildings in the Common Area and any future harm to them.  Indeed, the only harm alleged by Plaintiffs is that allegedly caused by the impediment to access to the Market and limited customer parking, and Plaintiffs have not set forth how the planned future construction of the buildings in the Common Area would further limit access, reduce parking, or otherwise cause Plaintiffs' irreparable economic harm.  Moreover, it appears that should Plaintiffs suffer economic losses as a result of any construction of buildings in the Common Area, such losses would be recoverable through this action.  Furthermore, given Plaintiffs' expressed concerns about this Court's ability to remedy any damage caused once the structures are built, Defendants are on notice that they will be required to cease construction and ameliorate any construction that they have erected if Plaintiffs prevail and the Court deems that remedy appropriate.

For the foregoing reasons, the Court finds that Plaintiffs have failed to demonstrate they will suffer irreparable harm if preliminary relief is not granted.  At most, Plaintiffs have shown that they have suffered some loss based on the access and parking issues to the property that may be remedied through the instant action if Plaintiffs prevail.  Accordingly, the Court concludes that this factor weighs in favor of denying Plaintiffs' request for a preliminary injunction.

### C.  Balance of Equities

In evaluating a request for preliminary relief, the Court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  Here, Plaintiffs argue that this factor tips in their favor because they allege that Developer Defendants' misconduct has deterred customers from their businesses and impeded vendors from delivering products to them.  Moreover, Plaintiffs contend that this factor supports granting injunctive relief because Developer Defendants are seeking to evict two of the Plaintiffs.  However, Developer Defendants argue that this factor tips in their favor because they would suffer monetary damages if enjoined from proceeding with construction and they face the possibility of breaching their contract agreements with the District.

The Court finds that this factor does not weigh in favor of either party based on the record before the Court at this time.  As an initial matter, the Court rejects Plaintiffs' argument that the mere existence of eviction proceedings in D.C. Superior Court requires the Court to find this factor weighs in their favor.  As set forth above, the D.C. Superior Court is tasked with determining whether Plaintiffs are in breach of their lease agreements.  If Plaintiffs are evicted, it will be based on a finding by that court that Plaintiffs are in breach.  As such, the fact that Plaintiffs may face lawful eviction does not tip this factor in their favor.  Furthermore, the Court rejects Developer Defendants argument that this factor tips in their favor because an injunction may put them in the position of breaching their contractual obligations to the District.  As a practical matter, if the Court grants an injunction, Developer Defendants would be precluded from acting pursuant to an Order from this Court.  Moreover, the Court notes without deciding that if Developer Defendants have contractual obligations to Plaintiffs and the District that are in conflict, i.e., Developer Defendants must breach leases with Plaintiffs to fulfill obligations to the District, any potential injury would not tip this factor heavily in Developer Defendants' favor since presumably the lease obligations

which allegedly arose in 2000 and 2001 were in effect prior to any contractual obligations that arose between Developer Defendants and the District in this action.

The Court now turns to the parties' arguments regarding the Common Area of the Municipal Fish Market.  Plaintiffs request that this Court enjoin Developer Defendants from further construction and encroachments onto the Common Area which Plaintiffs argue constitutes a breach under the lease agreement.  As discussed further *supra*, it is unclear at this time whether there is a lease agreement and, if there is, whether either or both parties' conduct has breached those agreements.  Plaintiffs have demonstrated that there will be some injuries if this Court does not grant an injunction and Plaintiffs ultimately prevail on the state and common law claims because Developer Defendants' conduct will affect their businesses.  However, Developer Defendants have demonstrated that there will be some injuries if the Court grants the injunction and Developer Defendants ultimately prevail against Plaintiffs on the state and common law claims because they will be forced to cease construction during the pendency of this litigation or further order of this Court.  As such, the Court finds that both parties have demonstrated a cognizable injury should the Court rule against them with respect to the preliminary injunction and they ultimately prevail in this action on the merits.  Accordingly, the Court concludes that this factor is in equipoise.

### D.  Public Interest

"'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  Each party argues that the public interest is more greatly served by the Court ruling in their favor on the instant motion.

However, the Court concludes that this factor does not weigh in favor of either party's position with respect to the request for preliminary relief.

First, Plaintiffs argue that granting their request for preliminary relief is in the public's best interest because it will end Developer Defendants' threat of wrongful eviction and force Developer Defendants to immediately honor their contractual commitments to them. As discussed above, the Court concludes that while two of the Plaintiffs are facing eviction proceedings in D.C. Superior Court, those proceedings are independent from the instant action and any ruling in those actions would not affect the crux of Plaintiffs' case before this Court. Ultimately, D.C. Superior Court will determine whether Plaintiffs' evictions as sought by Developer Defendants are lawful. Moreover, as discussed already, the Court notes that whether Developer Defendants have contractual obligations to Plaintiffs remains an open issue in this litigation. As such, the Court cannot conclude that enjoining the Developer Defendants from engaging in certain conduct at this time is in the public's best interest because it is uncertain what, if any, contractual obligations the parties have to one another.

The parties also present arguments regarding the public consequences with respect to the use of the land at issue. Plaintiffs present a petition to "Preserve the Southwest Waterfront Municipal Fish Market," signed by 2,300 members of the public to support their argument that granting a preliminary injunction is in the interest of the public. *See* Pls.' PI, Ex. Y (Petition to Preserve Market). Developer Defendants argue that permitting the continued construction is in the public's best interest because the construction work will "improve, renovate, upgrade, and restore the Southwest Waterfront, as envisioned by the District of Columbia and various other government agencies." Developer Defs.' Opp'n to PI at 25. The Court finds that both parties have presented valid arguments related to the property at issue with respect to the public consequences

to both granting and denying the requested preliminary relief.  As such, the Court concludes that this factor also is in equipoise.

### E.  Next Steps

In light of the Court's recent rulings, the Court notes that it is willing to refer this matter to mediation through a Magistrate Judge, the Court's ADR program, or another form of mediation if the parties are interested.  While obviously the Court leaves the issue of whether or not to litigate squarely with the parties, it is the Court's considered opinion that mediation may be beneficial to the parties, even if only to address the issues raised in the instant motion during the pendency of this litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to establish that they have a substantial likelihood of success on the merits or that they will suffer irreparable harm if the Court does not grant the request for preliminary relief.  Moreover, the Court finds that the balance of equities and the public interest do not tip in favor of either party.  Accordingly, the Court DENIES Plaintiffs' [18] Motion for Preliminary Injunction.

An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge