## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WHARF, INC.<br>t/a THE WHARF, *et. al.*,<br><br>      **Plaintiffs/Counter-Defendants,**<br><br>v.<br><br>THE DISTRICT OF COLUMBIA,<br><br>HOFFMAN-MADISON WATERFRONT LLC,<br><br>      **Defendants,**<br><br>and<br><br>WHARF HORIZONTAL REIT LEASEHOLDER LLC,<br><br>      **Defendant/Counter-Plaintiff.** | **Civil Action No. 15-cv-1198 (CKK)** |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF WHARF HORIZONTAL REIT
LEASEHOLDER LLC's BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO DISMISS WHRL's FIRST AMENDED COUNTERCLAIM**

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ....................................................................................1

II.  ARGUMENT ..........................................................................................................4

   A.  The Governing Standard ..............................................................................4

   B.  None of the Grounds Advanced by the Whites Justifies a Dismissal of WHRL's
       Unjust Enrichment and *Quantum Meruit* Claims ...........................................5

      1.  The Whites' Allegation that the Leases Are Valid Is Not a Basis for Dismissal
         of WHRL's Equitable Claims ..........................................................................6
      2.  The Whites' Contention that WHRL's Equitable Claims Are Time Barred Is
         Meritless.........................................................................................................7
      3.  The Whites' Contention that the Conferred Benefits Were Unrequested or
         Unwanted Raises Questions of Fact That Cannot be Resolved on a Rule
         12(b)(6) Motion ............................................................................................10

   C.  WHRL's Alternative Breach of Contract Claim Far Exceeds the Minimum
       Requirements for Stating a Claim that Can Withstand a Rule 12(b)(6) motion...............11

   D.  This Court Is Not Precluded from Granting WHRL's Prayer for Eviction as Relief
       on Its Breach of Contract and Tenancy at Sufferance Claims ..........................................12

   E.  Material Breaches of a Lease Are Not Required for Eviction Where, as Here, the
       Lease Specifically Provides that Remedy for Defaults.....................................................14

III. CONCLUSION.....................................................................................................17

4832-8426-6034.v6

# TABLE OF AUTHORITIES

Page(s)

Cases

*ABA, Inc. v. District of Columbia*,
   40 F. Supp. 3d 153 (D.D.C. 2014) ...................................................................7

*Atherton v. District of Columbia Office of Mayor*,
   567 F.3d 672 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1039 (2010) ......................................5

*Badwal v. Bd. of Trustees of Univ. of District of Columbia*,
   139 F. Supp. 3d 295, 319 (D.D.C. 2015) ...................................................................3, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................4

*Bembery v. District of Columbia*,
   758 A.2d 518 (D.C. 2000) ...................................................................8

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ...................................................................4, 5

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   130 F. Supp. 3d 236 (D.D.C. 2015) ...................................................................4, 5, 10

*Eckert v. Fitzgerald*,
   550 F. Supp. 88 (D.D.C. 1982) ...................................................................4, 13, 14

*Frog, Inc. v. Dutch Inns of Am., Inc.*,
   488 A.2d 925 (D.C. 1985) ...................................................................15

*Herian v. United States*,
   363 F. Supp. 287 (D.D.C. 1973) ...................................................................13, 14

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003) ...................................................................5

*Howard Town Ctr. Developer, LLC v. Howard Univ.*,
   7 F. Supp. 3d 64 (D.D.C. 2013), *vacated on other grounds*,
   788 F.3d 321 (D.C. Cir. 2015) ...................................................................15

*Jackson v. Donovan*,
   856 F. Supp. 2d 147 (D.D.C. 2012) ...................................................................4, 5

*Keefe Co. v. Americable Int'l, Inc.*,
   755 A.2d 469 (D.C. 2000) ...................................................................8

*Macharia v. United States*,
    334 F.3d 61 (D.C. Cir. 2003) ..................................................................5

*McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*,
    636 F. Supp. 2d 1 (D.D.C. 2009) ............................................................7

*Nevius v. Africa Inland Mission Int'l*,
    511 F. Supp. 2d 114 (D.D.C. 2007) .........................................................7

*News World Commc'ns, Inc. v. Thompsen*,
    878 A.2d 1218 (D.C. 2005) ..................................................................7, 8

*Plesha v. Ferguson*,
    725 F. Supp. 2d 106 (2010) .....................................................................7

*Shapiro v. Tauber*,
    575 A.2d. 297 (D.C. 1990) ...............................................................16, 17

*Shirk v. Garrow*,
    505 F. Supp. 2d 169 (D.D.C. 2007) .........................................................5

*Smith v. Washington Post Co.*,
    962 F. Supp. 2d 79 (D.D.C. 2013) ................................................. *passim*

*Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan*,
    Civ. No. 90-2728(RCL), 1991 WL 212232 (D.D.C. Sept. 30, 1991) ......9

*United States v. District of Columbia*,
    669 F.2d 738 (D.C. Cir. 1981) ..........................................................13, 14

*Williams-Jones v. LaHood*,
    656 F. Supp. 2d 63 (D.D.C. 2009) ...........................................................5

<u>Statutes and Codes</u>

United States Code
    Title 28 Section 1331 ...........................................................................13
    Title 28 Section 1345 .....................................................................13, 14
    Title 28 Section 1367 ...........................................................................13

District of Columbia Code
    Section 45-1410 ...................................................................................13
    Section 42-3210 .........................................................................3, 12, 13

District of Columbia Court Reorganization Act of 1970 ............................13, 14

Rules and Regulations

Federal Rules of Civil Procedure
Rule 8(a)...............................................................................................................................4
Rule 12(b)(6)............................................................................................................... *passim*

Defendant/Counterclaim-Plaintiff Wharf Horizontal REIT Leaseholder LLC ("WHRL")[1], through its undersigned counsel, respectfully submits this brief in opposition to Plaintiffs' (the "Whites") June 3, 2016 Motion (ECF No. 61) to Dismiss WHRL's First Amended Counterclaim (ECF No. 56).  The Whites' motion should be denied in its entirety.

## I.    PRELIMINARY STATEMENT

WHRL moved last year to dismiss the Whites' First Amended Complaint (ECF No. 17), arguing that the Whites' alleged leases terminated automatically years ago by the perpetuities savings clause, Section 38.E, in each lease.  *See* Developer Defs.' Mot. to Dismiss Pls.' First Am. Compl., ECF No. 20.  This Court denied that motion because, the Court found, Section 38.E is ambiguous and the Court declined to interpret that provision at the motion to dismiss stage. *See* Mem. Op., ECF No. 45, at 20.  This Court found that the question of the validity of the Whites' leases cannot be decided "without the benefit of a more complete factual record."  Mem. Op., ECF No. 47, at 6.  Since that time, the factual record has not been developed at all.[2]  WHRL has now filed a counterclaim.

Amazingly, the first argument in support of the Whites' motion to dismiss WHRL's counterclaim is that "Plaintiffs' Leases Have not Expired," followed thereafter by their supporting argument that "Provision 38.E in Plaintiffs' Leases did not Cause them to Expire Three Years After Execution."  Pls.' Br. in Support of their Mot. to Dismiss ("Pls.' Br."), ECF

---

[1]  WHRL is the party to the April 23, 2014 Ground Lease Agreement with the District of Columbia and is also the assignee of the District's interests in the leases with the Whites and the holder of the claims against them.  *See* First Am. Countercl., ECF No. 56, at 4, ¶ 14; 6, ¶ 33.  For that reason, although defendant Hoffman-Madison Waterfront LLC ("HMW") is an indirect partial owner of WHRL, HMW did not join the counterclaim as a counter-plaintiff.

[2]  Following the Court's September 2015 rulings, ECF Nos. 44, 45, 46, and 47, the parties pursued mediation in an attempt to resolve their disputes.  As reflected in the Joint Status Report filed by the parties on March 15, 2016, the mediation concluded unsuccessfully on March 11, 2016.  *See* Joint Status Report, ECF No. 51.  Discovery has not yet begun.

No. 61-1, at 7.[3]  That is the same lease provision on which WHRL based its motion to dismiss, and which the Court declined to interpret at the motion to dismiss stage.  The Whites' position that the leases are valid is also the foundation for their arguments that:

- "[N]o Quasi-Contract Claims can be Asserted Where a Valid Contract Exists."

- "Certain Express Provisions of the Plaintiffs' Leases Survive and Govern Holdover Conduct, so no Quasi-Contract Claims can be Maintained Against Plaintiffs."

Pls.' Br., ECF No. 61-1, at 7, 25.

In view of the Court's previous ruling that it "cannot conclude which party is *substantially* likely to succeed with respect to the validity of the lease at this time" (Mem. Op., ECF No. 47, at 6 (emphasis in original)), all of the Whites' arguments in their Rule 12(b)(6) motion that are premised upon their view that the leases are valid must fail.  Indeed, even if the Court had not ruled as it did, these arguments would fail because they ask the Court to turn the Rule 12(b)(6) analysis on its head.  Rather than being premised upon the Court's obligation to accept as true the factual allegations advanced by WHRL regarding this issue – that the leases were either void *ab initio* or terminated no later than 2004 – these arguments instead ask the Court to reject the allegations advanced by WHRL and instead accept as true the Whites' contention that the leases are valid.

---

[3]  In addition, the four page "Preliminary Statement" set forth in the Whites' brief in support of their motion to dismiss the counterclaim is simply a rehashing of the arguments this Court already considered before making its rulings in September 2015.  Since the Court has already ruled that the dispute between the parties concerning the validity of the leases cannot be decided until after there is a more complete factual record, WHRL will refrain from using this brief as an opportunity to restate its counter positions.

2

The other arguments advanced by the Whites as grounds for a Rule 12(b)(6) dismissal of WHRL's counterclaims fare no better.

First, the Whites' contention that WHRL's alternative breach of contract claim is "not supported by sufficient factual content" is off the mark.  It is well established in this Court that "to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach."  *Badwal v. Bd. of Trustees of Univ. of District of Columbia,* 139 F. Supp. 3d 295, 319 (D.D.C. 2015).  Here, the several pages of WHRL's First Amended Counterclaim itemizing the provisions of the leases breached by the Whites and conduct establishing the breaches of those provisions far exceeds that minimum standard.

Second, the Whites' argument that WHRL blew a three-year statute of limitations even though it filed its counterclaim less than three years after it became the Whites' landlord also is off the mark.  WHRL's equitable claims accrued when the Whites failed to compensate WHRL for benefits conferred upon the Whites.  That happened, at the earliest, when the District of Columbia entered into the ground lease for the Municipal Fish Market with WHRL in April 2014 – well within the three-year limitations period that the Whites claim is applicable to WHRL's equitable claims.  Furthermore, the law is clear that where, as here, breaches are continuing on an ongoing basis, the limitations period merely limits the "lookback" period for damages.

Third, there is nothing in D.C. Code § 42-3210 that precludes this Court from granting WHRL's prayer for the eviction of the Whites as a remedy for prevailing on WHRL's tenancy at sufferance or alternative breach of contract claim.[4]  Indeed, although the Whites state that "it does not appear that any federal court in *(sic)* District of Columbia has heard an eviction matter

---

[4] As discussed, *infra* at 14, the Whites ignore that WHRL also seeks damages on both claims.

in the first instance," Pls.' Br., ECF No. 61-1, at 27, this Court did so in *Eckert v. Fitzgerald*, 550 F. Supp. 88 (D.D.C. 1982).

Fourth, the Whites' recitation of the doctrine that "equity abhors forfeiture" is not a basis for dismissing WHRL's counterclaim for breach of contract because: (1) the breaches alleged by WHRL are material; (2) termination and eviction are appropriate under D.C. law even for breaches not otherwise deemed material, where, as here, a lease provides that the leasehold will be terminated following notice of and a failure to cure a default; and (3) WHRL's breach of contract claim seeks damages as well as termination and eviction.

## II.   ARGUMENT

### A.   The Governing Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 84 (D.D.C. 2013) (*citing Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must be sufficient "to give a defendant fair notice of what the … claim is and the grounds upon which it rests."  *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To provide the "grounds" of "entitle[ment] to relief," a counterclaim must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but, importantly, "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss.  *Twombly*, 550 U.S. at 555; *see Jackson v. Donovan*, 856 F. Supp. 2d 147, 148–49 (D.D.C. 2012) (quoting same).

A Rule 12(b)(6) motion does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.  *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 247 (D.D.C. 2015).  It is not necessary to

4

plead all elements of a prima facie case in the complaint. *Id.* "In resolving a Rule 12(b)(6)

motion, the court must treat the factual complaint's allegations [set forth in the counterclaim] –

including [those presenting] mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the [counterclaimants'] favor." *Williams-Jones v. LaHood*, 656 F. Supp.

2d 63, 67 (D.D.C. 2009) (citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003);

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*

*v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Shirk v. Garrow*, 505 F. Supp. 2d 169, 172

(D.D.C. 2007) (same); *see Jackson*, 856 F. Supp. 2d at 149 ("When presented with a motion to

dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual

allegations contained in the complaint.") (citing *Atherton v. District of Columbia Office of*

*Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1039 (2010)).

### B.     None of the Grounds Advanced by the Whites Justifies a Dismissal of WHRL's Unjust Enrichment and *Quantum Meruit* Claims

From the outset of this lawsuit, the Developer Defendants (WHRL and HMW) have

made their primary position plain – the leases at issue are not valid: either they were void *ab*

*initio* because the term of the leases exceeded the Mayor's authority, or they terminated no later

than 2004 pursuant to their perpetuities savings clauses.[5]   The Developer Defendants have also

made it plain that, despite this primary position, they have taken steps to preserve their alternate

position that, should the Court find that the leases were not void *ab initio* or did not expire by

---

[5]   In their footnote 3, the Whites argue that, even if it expired in 2004, the Saltwater lease was "renewed" by the District (apparently in connection with the inclusion of an expiration date for that lease) in the assignment of that lease from DNM Seafood, Inc. to W.D. Inc.  *See* Pls.' Br., ECF No. 61-1, at 13, n3.  But, the meaning and legal effect of the clause relied upon by the Whites – which is not even identified in their footnote 3 – is by no means undisputed.  WHRL maintains that nothing in or relating to the assignment resurrected an already-terminated lease. And, the Whites' attempt in an assignment to resurrect a lease that was not then in effect merely supports WHRL's position that Section 38.E operated to terminate the lease.

2004, the Whites have defaulted on several of the tenants' obligations under the terms of those leases, entitling WHRL to damages, confirmation that the leases terminated, and the Whites' eviction from the premises.

The claims asserted in WHRL's counterclaim are consistent with these alternative positions.  The claims for unjust enrichment (Count I), *quantum meruit* (Count II), and tenants at sufferance (Count IV) are all premised upon WHRL's primary argument.  The claims seek compensation in equity for the Whites' occupancy of the premises at below market rents during the time period since the leases were assigned to WHRL, as well as compensation for the Whites' unjust benefitting from expenditures and improvements that WHRL made to the Municipal Fish Market.  In addition, Count IV also seeks the termination of the Whites' tenancy at sufferance and their eviction from the premises.  WHRL's alternative claim for breach of contract seeks damages arising from the Whites' breaches of several of the Whites' contractual obligations as well as the termination of the leases for those breaches pursuant to the unambiguous default provision set forth therein.

### 1.   The Whites' Allegation That the Leases Are Valid Is Not a Basis for Dismissal of WHRL's Equitable Claims

In arguing that this Court should dismiss WHRL's unjust enrichment and *quantum meruit* claims, the Whites first devote nearly four pages of their brief  (ECF No. 61-1 at 12–15) to the argument that the equitable claims are not viable because the leases are valid contracts.  But, as noted in the Preliminary Statement above, the Whites' position that the leases are valid cannot be accepted as true by this Court for purposes of ruling on a motion to dismiss WHRL's counterclaim that is based on allegations exactly the opposite of the Whites' position.  Accordingly, this argument fails for this reason alone.  But, in addition, it is well established that a claimant can plead causes of action for breach of contract and equitable relief in the alternative.

6

*See, e.g.*, *ABA, Inc. v. District of Columbia*, 40 F. Supp. 3d 153, 172 n.24 (D.D.C. 2014);

*McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 n.10 (D.D.C. 2009);

*Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n.6 (D.D.C. 2007).[6]

**2.     The Whites' Contention That WHRL's Equitable Claims Are Time Barred Is Meritless**

Equally unavailing is the Whites' argument that WHRL's unjust enrichment and *quantum meruit* claims should be dismissed because they are time barred.  In constructing that argument, the Whites contend that WHRL's equitable causes of action accrued in 2004 "at the latest" when, as WHRL contends, the leases expired.  This argument cannot withstand scrutiny for several reasons.

First, as a matter of fact and logic, WHRL could not and did not confer any benefits upon the Whites until on or about the time that the District and WHRL entered into their April 2014 Ground Lease Agreement concerning the Municipal Fish Market premises (*see* First Am. Countercl. ¶ 14, ECF No. 56, at 4).  WHRL is not seeking any compensation for the period before then.

Second, the Whites' suggestion that legal support for their position can be found in *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218 (D.C. 2005) is unfounded.  The actual holding in *News World* is that the plaintiff's cause of action for unjust enrichment accrues when the "plaintiff's last service has been rendered and compensation has been wrongfully withheld." *Id.* at 1219, 1225.  There is nothing in the analysis of *News World* that would support the notion that WHRL's claims for unjust enrichment and *quantum meruit* could accrue *before* any acts of

---

[6]  The situation in this case is not at all like the one addressed by this Court in *Plesha v. Ferguson,* 725 F. Supp. 2d 106 (2010), where the Court found pleading in the alternative inappropriate because neither party denied the existence of the agreement.  *See id.* at 112.

"service" on the part of WHRL that conferred a benefit upon the Whites or that the accrual of the cause of action for WHRL's equitable claims should be measured solely based upon the 2003 and 2004 dates when the Developer claims their leases terminated.  Indeed, under the actual holding in *News World*, WHRL's equitable claims arose no earlier than in or about April 2014 (when WHRL's first "service" conferring benefits upon the Whites occurred) – well within the three-year limitations period that the Whites claim applies.  *See* Pls.' Br., ECF No. 61-1, at 33.[7]

But, even if the Court were to ignore the actual holding in *News World* and buy into the Whites' contention that the wrongful act triggering the accrual of WHRL's claims is only their continued occupancy after the leases terminated in 2003 and 2004 (as opposed to, at the earliest, the date of WHRL's service), the Whites' occupation of the Municipal Fish Market premises without a valid lease is not one act that occurred only one time in 2003 or 2004 for purposes of the accrual of WHRL's cause of action.  Instead, every day and month that the Whites occupy the premises without a valid lease is a new act, and it is well established that, in situations like this, the limitations period runs from the date of each new act.  *See, e.g.*, *Smith,* 962 F. Supp. 2d at 86; *Bembery v. District of Columbia*, 758 A.2d 518, 520 (D.C. 2000); *Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469 (D.C. 2000).

For example, in *Bembery,* the plaintiff was a landlord of townhouses leased to the District who claimed that the District had breached its contractual obligation to pay additional rent for after-hours use of the townhouses.  *Bembery*, 758 A.2d at 519.  Despite the fact that this conduct began more than three years before the lawsuit was initiated, the District of Columbia Court of Appeals affirmed the trial court's conclusion that the statute of limitations did not bar a claim for

---

[7]  WHRL does not concede that the limitations period is as short as three years, but it is not necessary to decide that question now because the Whites do not prevail even under a three-year statute of limitations.

missed payments within the limitations period, but did bar a claim for missed payments occurring before the beginning of the three-year period.  *See id.* at 520.  And, in *Smith*, the plaintiff was a distributor of periodicals for The Washington Post who alleged that the paper had breached both actual and implied contracts (or was unjustly enriched) by failing to provide proper credits or refunds for returned unsold periodicals.  *Smith*, 962 F. Supp. at 82–83.  Based upon the plaintiff's allegation that this conduct began more than three years before the date of the complaint, the defendant argued that the claims could not survive a Rule 12(b)(6) motion because of the applicable statute of limitations.  *Id.* at 85–86.  This Court disagreed, noting that each failure by the defendant to provide the proper credits or refunds could be viewed as a new breach:  "[Plaintiff] may allege that defendant breached contract terms and wrongfully withheld payments on several, distinct occasions in the three years leading up to the complaint."  *Id.* at 86 (citing *Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan*, Civ. No. 90-2728(RCL), 1991 WL 212232 (D.D.C. Sept. 30, 1991) ("[W]rongful acts or breaches of duty which occur in distinct intervals or installments, as opposed to being continuous, cause distinct and severable injuries.  Consequently, each breach gives rise to [a] new and separate cause of action and the statutes of limitations in both jurisdictions run separately for each.")).

Applying these holdings to the facts here, even if it could be accepted that the beginning of the Whites' wrongful tenancy has any relevance to the question of the accrual of WHRL's equitable causes of action, every month that the Whites retain possession of the premises without a valid leasehold interest gives rise to a new cause of action by the landlord in equity to be adequately compensated for any unjust enrichment or conferral of benefits.

Finally, as this Court recognized in its September 2015 ruling on the defendants' motions to dismiss, "[b]ecause statute of limitations defenses often are based on contested facts, the court

should be cautious in granting a motion to dismiss on such grounds: 'dismissal is appropriate only if the complaint on its face is conclusively time barred.'" Mem. Op., ECF No. 45, at 5 (citations omitted). *See also Smith*, 962 F. Supp. 2d at 86; *Campbell*, 130 F. Supp. 3d at 254.

> **3.   The Whites' Contention That the Conferred Benefits Were Unrequested or Unwanted Raises Questions of Fact That Cannot be Resolved on a Rule 12(b)(6) Motion**

Also off the mark is the Whites' fact-based contention that this Court should dismiss WHRL's claims for unjust enrichment and *quantum meruit* because the "benefits WHRL alleges were unrequested or unwanted." Pls.' Br., ECF No. 61-1 at 11, 26–27. The wobbly foundation for this argument is apparent. It is built upon: (1) the bald assertion that the benefits were not requested or wanted (which, of course, is an assertion of fact that is outside the confines of the allegations set forth in the complaint and therefore, at best, raises a dispute of fact); (2) the contention that *one* of the relevant factors in determining whether compensation is appropriate under the theories of unjust enrichment and *quantum meruit* is that the "defendant was on notice that the plaintiff expected payment" (the Whites do not mention or discuss any other factor); and (3) the notion that it would not be possible for this Court to make a finding that the Whites were "on notice that [WHRL] expected payment" for the improvements in light of WHRL's supposedly mutually exclusive counterclaim allegation that, pursuant to the terms of WHRL's ground lease agreement with the District of Columbia (to which the Whites are not parties), certain improvements were to be made at WHRL's "sole cost and expense."[8]

At best, the first two prongs of this wobbly foundation raise questions of fact that cannot be resolved on a Rule 12(b)(6) motion. And the third prong is just wrong – it is, of course,

---

[8]   By reciting these elements, WHRL is not admitting that these are necessary elements of its claim. But, at a minimum, they are factually in dispute.

possible for it to be true that WHRL agreed with the District of Columbia that the improvements and other benefits would be made at WHRL's sole cost and expense – as opposed to the cost and expense of the District of Columbia – and also true that WHRL expected to be compensated (or reimbursed) by the tenants at the Municipal Fish Market for those improvements and other benefits.

### C.    WHRL's Alternative Breach of Contract Claim Far Exceeds the Minimum Requirements for Stating a Claim That Can Withstand a Rule 12(b)(6) Motion[9]

The law is clear: "[b]reach of contract claims not involving allegations of fraud or mistake may be pled generally and are not subject to a heightened pleading standard." *Smith,* 926 F. Supp. 2d at 87.   "[T]he pleading standard for a breach of contract claim is not high." *Badwal*, 139 F. Supp. 3d at 319.   Indeed, "to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Id.*

In *Smith*, the Court found it enough that "Smith has adequately identified the contracts and terms at issue and states a plausible claim for relief for breach," and that, "Smith has explained, with enough specificity, which written agreements and contractual terms are at issue." *Smith*, 926 F. Supp. 2d at 87.   Indeed, the Court made it clear in *Smith* that pleading a breach of contract claim that can withstand a Rule 12(b)(6) motion requires no more than an identification

---

[9]   In addressing WHRL's alternative breach of contract claim, the Whites focus only on that part of the claim seeking termination of the leasehold interests and ejectment.   But, as Paragraph 247 of the First Amended Counterclaim states: "As a result of the White Tenants' breaches, the Landlord has suffered and will continue to suffer damages in an amount to be proven at trial."   First Am. Countercl., ECF No. 56, at 36 ¶ 247.   In addition, the prayer for relief seeks damages on all of WHRL's causes of action.   *Id.* at 37.

of the contract, the terms alleged to have been breached, and the conduct alleged to give rise to the breach. *Id*.

By any measure, WHRL's alternative claim for breach of contract far exceeds this minimum standard. Indeed, an examination of the eleven pages of allegations set forth in the First Amended Counterclaim (ECF No. 56 at 9–20) demonstrates that WHRL identifies each of the provisions of the leases that the Whites breached and then details actions on the part of the Whites that violated the identified lease provisions. But, perhaps the best proof of the hollowness of the Whites' contention that the alleged breaches "are not supported by sufficient factual content" is that fourteen pages of their brief are devoted to presenting their refutation of WHRL's allegations. That alone demonstrates that the counterclaim gave the Whites adequate notice of the breaches that are being alleged. Indeed, it is hard to see how the Whites could believe that presenting the Court fourteen pages of argument setting forth their own reading of the lease provisions cited by WHRL and their own explanations of their cited conduct could serve as a basis for this Court to rule that WHRL has failed to state a claim for breach of contract.

**D.    This Court Is Not Precluded From Granting WHRL's Prayer for Eviction as Relief on Its Breach of Contract and Tenancy at Sufferance Claims**

Similarly unavailing is the Whites' contention that this Court lacks jurisdiction to grant WHRL's prayer for eviction (in addition to damages) as relief on its claims for breach of contract and tenancy at sufferance (Counts III and IV).[10] The Whites' argument is built solely upon the language of D.C. Code § 42-3210, which the Whites read to mean that "the only court that has

---

[10] On April 15, 2016, WHRL voluntarily dismissed the separate eviction proceedings that it had initiated against the Whites in D.C. Superior Court because of the overlap of facts and issues and to avoid the risk of inconsistent outcomes.

jurisdiction to hear an eviction action is the District of Columbia Superior Court."  Pls.' Br., ECF
No. 61-1, at 32.  But there is nothing in the language of that D.C. Code section to suggest that the
jurisdiction of the Superior Court is exclusive.  To the contrary, there is no mention of
"exclusive" jurisdiction in the statute:

> ### § 42-3210. Action in ejectment -- When proper.
>
> Whenever a lease for any definite term shall expire, or any tenancy shall be
> terminated by notice as aforesaid, and the tenant shall fail or refuse to surrender
> possession of the leased premises, the landlord may bring an action of ejectment
> to recover possession in the Superior Court of the District of Columbia.

And, as noted above, while the Whites state that "it does not appear that any federal court in *(sic)*
District of Columbia has heard an eviction matter in the first instance," this Court did so in
*Eckert v. Fitzgerald,* 550 F. Supp. 88 (D.D.C. 1982).

In *Eckert,* this Court found no barrier to exercising jurisdiction over an eviction action
under D.C. Code § 42-3210. [11]  *See Eckert,* 550 F. Supp. at 89.  In doing so, this Court observed
that the reasoning of a prior decision of this Court reaching a contrary result, *Herian v. United
States*, 363 F. Supp. 287 (D.D.C. 1973), was flawed and had been "rejected" by the D.C. Circuit
in *United States v. District of Columbia,* 669 F.2d 738 (1981).  *Id.*  In *Herian,* the plaintiff in the
eviction action was the United States, and it had invoked this Court's jurisdiction pursuant to 28
U.S.C. § 1345, which includes an exception to that provision's conferral of federal court
jurisdiction "as otherwise provided by Act of Congress."[12]  *Herian*, 363 F. Supp. at 289-290.
The Court in *Herian* found that such an exception could be found based upon a negative

---

[11] The *Eckert* case and the earlier cases discussed therein concerned a prior codification of the
same statute, D.C. Code § 45-1410.

[12] The language of 28 U.S.C. § 1367 (supplemental to 28 U.S.C. § 1331) – the basis for this
Court's jurisdiction here – is similar.  Section 1367 provides, "[e]xcept . . . as expressly
provided otherwise by Federal Statute."

inference that could be drawn from Congress's approval – as part of the District of Columbia Court Reorganization Act of 1970 – of a revision to the D.C. eviction statute that removed a reference to this Court's concurrent jurisdiction over eviction actions. *Id.* at 289–90.

But, in *United States v. District of Columbia,* the D.C. Circuit found wanting the District of Columbia's nearly identical argument to the one in *Herian* that the requisite exception to § 1345 could be found in Congress's approval of a tax code provision that, unlike D.C. Code § 42-3210, *explicitly* provided for the exclusive jurisdiction of the Tax Division of the D.C. Superior Court over the validity and amount of all assessments of taxes made by the District of Columbia. *See United States v. District of Columbia,* 669 F.2d 738, 741 (D.C. Cir. 1981). In so ruling, the D.C. Circuit stated: "[w]hile Congress may displace section 1345 in particularly categories of cases if it so desires, courts will not infer such displacements unless Congress has made its intention plain." *Id.* Summing up the import of that ruling, this Court stated in *Eckert* that the "Court of Appeals rejected *Herian's* premise that a provision of the District of Columbia Reorganization Act of 1970 could be construed as constituting an exception to a federal court's original jurisdiction under 28 U.S.C. §1345." *Eckert*, 550 F. Supp. at 89.

In sum, the ruling of the D.C. Circuit in *United States v. District of Columbia,* and the ruling of this Court in *Eckert* make it plain that the D.C. District Court does have jurisdiction over WHRL's prayer for the eviction of the Whites as relief on its breach of contract and tenancy at sufferance claims.

### E.  Material Breaches of a Lease Are Not Required for Eviction Where, as Here, the Lease Specifically Provides that Remedy for Defaults

Finally, the Whites simply have it wrong when they contend that there is some basis for this Court to dismiss WHRL's First Amended Counterclaim because eviction is a "harsh remedy" that "can be imposed here only if the breach is material." Pls.' Br., ECF No. 61-1 at 4

14

(or 9).  For starters, the breaches alleged by WHRL are material.  But, in addition, the Whites simply ignore the fact that WHRL's breach of contract claim seeks damages for the Whites' breaches in addition to eviction.  *See* First Am. Countercl., ECF No. 56 at 36, ¶ 247. Consequently, the Whites' argument on this point is, at best, directed only at a requested remedy, not at a claim.  For that reason alone, their argument on this point is not a basis for a Rule 12(b)(6) dismissal.

But, more to the point, the Whites' theory that the law requires a material breach for termination or eviction in this situation is simply wrong.  Where, as here, a lease provides that a leasehold interest terminates as the result of uncured defaults, those default provisions will be enforced.  *See, e.g.*, *Howard Town Ctr. Developer, LLC v. Howard Univ.*, 7 F. Supp. 3d 64, 83– 87 (D.D.C. 2013), *vacated on other grounds*, 788 F.3d 321 (D.C. Cir. 2015); *Frog, Inc. v. Dutch Inns of Am., Inc.,* 488 A.2d 925, 931 (D.C. 1985).  In *Frog,* the restaurant tenant in a hotel located in Georgetown argued that, because "equity abhors forfeitures," his leasehold interest should not have been terminated because of an uncured default in the tenant's obligations to operate the restaurant at a "high standard," to carry requisite insurance, and to provide certified statements of its quarterly and annual sales.  *Id.*  After quoting the lease provision entitling the landlord to terminate the lease upon the occurrence of uncured defaults, the Court stated "when the breach, as in the present case, is not of the duty to pay rent but rather of an obligation collateral to it, such as the duty to operate a restaurant in accordance with a lease, equity will not generally relieve the tenant from forfeiture."  *Id.*

Here, as in the lease at issue in *Frog,* the leases in question all contain provisions addressing Tenant Defaults, which provide:

§ 21.  Tenant's Defaults

Tenant shall be in default under this Lease if Tenant (a) fails to pay any rent or other sum required hereunder within twelve (12) days after its due date; or (b) fails to maintain any insurance required hereunder; or (c) abandons the Premises or fails to conduct business therein for a period of fifteen (15) or more consecutive days, absent a casualty and then only after allowing a period of as much as six (6) months in which to replace the affected Barge; or (d) assigns this Lease or sublets all or any portion of the Premises in violation of Section 19; or (e) fails to [begin or continue to] operate its existing businesses on [the applicable Barges] or (f) files for relief under the United States Bankruptcy Code (the "Bankruptcy Code") or under any other state or federal bankruptcy or insolvency law, or Tenant files an assignment for the benefit of creditors, or if an involuntary proceeding under the Bankruptcy Code or under any other federal or state bankruptcy or insolvency law is commenced against Tenant; or (g) defaults in any other obligation herein and such default is not remedied within thirty (30) days after written notice of the default from Landlord; provided, however, that Tenant's failure to perform any non-monetary obligation set forth in this Lease on its part to be performed three (3) or more times in any twelve (12) month period shall effect an immediate default, and Landlord thereupon may exercise any remedy set forth in Section 22 below without affording Tenant any opportunity to cure such default.

Pls.' Br, Ex. A (The Wharf Lease), ECF No. 61-02, at 15; Ex. B (BRW Lease), ECF No. 61-03,

at 13–14; Ex. C (W.D. Inc. Lease), ECF No. 61-04, at 13.

And, each of the leases provides that WHRL has the right to terminate the leases if the

default remains uncured following notice.  That section provides, in pertinent part:

§ 22.  Landlord's Remedies in Case of Tenant's Default

A. At any time after Tenant's default under this Lease, Landlord may (i) terminate this Lease upon notice to Tenant or by any available judicial process; and/or (ii) re-enter the Premises (with or without terminating the Lease), remove all property, which may include towing the Barge or Barges and storing same, at Tenant's expense without being deemed guilty of trespass and without liability for any loss or damage, and/or relet or otherwise deal with the Premises in any manner which Landlord determines in its sole discretion.

Pls.' Br, Ex. A (The Wharf Lease), ECF No. 61-02, at 16; Ex. B (BRW Lease), ECF No. 61-03,

at 14; Ex. C (W.D. Inc. Lease), ECF No. 61-04, at 14.  In short, then, if the leases were valid, the

Whites contractually agreed that their leasehold interests would terminate upon the occurrence of

uncured defaults.  The Whites cannot now rely upon the supposed "abhorrence" of forfeitures "in equity" to save them from the unambiguous terms of the contracts that they claim to be valid and in force.

The cases relied upon by the Whites are not to the contrary.  But, notably, one of those cases, *Shapiro v. Tauber*, 575 A.2d. 297 (D.C. 1990), makes it clear that, in the absence of unambiguous lease provisions like those here, the issue of whether termination and eviction are an appropriate remedies for the breach of lease provisions involves questions of fact that require consideration of several factors.  *Id.* at 300 (internal citations omitted).  Thus, even under the Whites' view of the applicable law, their "equity abhors a forfeiture" theory would not be a basis for a Rule 12(b)(6) dismissal.

## III.   CONCLUSION

For the foregoing reasons, the Whites' motion to dismiss WHRL's First Amended Counterclaim should be denied in its entirety.


Dated:  June 17, 2016                             Respectfully submitted,

                                                  Michael S. McNamara by /s/ Clare M. Cavaliero
                                                  Michael S. McNamara, D.C. Bar No. 493773
                                                  Gerald Zingone, D.C. Bar No. 396604
                                                  Clare M. Cavaliero, D.C. Bar No. 1029442
                                                  Pillsbury Winthrop Shaw Pittman LLP
                                                  1200 Seventeenth Street, N.W.
                                                  Washington, D.C.  20036
                                                  michael.mcnamara@pillsburylaw.com
                                                  clare.cavaliero@pillsburylaw.com

                                                  *Counsel for Defendants Hoffman-Madison*
                                                  *Waterfront LLC and Wharf Horizontal REIT*
                                                  *Leaseholder LLC*

17

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE WHARF, INC.**<br>**t/a THE WHARF**, *et. al.*,<br><br>      **Plaintiffs/Counter-Defendants,**<br><br>**v.**<br><br>**THE DISTRICT OF COLUMBIA,**<br><br>**HOFFMAN-MADISON WATERFRONT**<br>**LLC,**<br><br>      **Defendants,**<br><br>**and**<br><br>**WHARF HORIZONTAL REIT**<br>**LEASEHOLDER LLC,**<br><br>      **Defendant/Counter-Plaintiff.** | **Civil Action No. 15-cv-1198 (CKK)** |

## [PROPOSED] ORDER

This matter having come before the Court on Plaintiffs' The Wharf, Inc., BRW, Inc., and Saltwater Seafood, Inc.'s Motion to Dismiss the First Amended Counterclaims of Wharf Horizontal REIT Leaseholder LLC ("WHRL"), and WHRL's Opposition thereto, and the Court having considered the matter, it is hereby

ORDERED that Plaintiffs' Motion to Dismiss is DENIED.

SO ORDERED.


Dated: _____        _____
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2016, I caused a copy of the foregoing to be served via

email on the following counsel:

Wendell L. Taylor, D.C. Bar No. 973873
Brian C. Hauser, D.C. Bar No. 1024406
Hunton & Williams LLP
2200 Pennsylvania Ave, N.W.
Washington, D.C.  20037
Tel: (202) 955-1627
Fax: (202) 857-3898
wtaylor@hunton.com
bhauser@hunton.com

*Counsel for Plaintiffs*

William F. Causey, D.C. Bar No. 260661
Matthew R. Blecher, D.C. Bar No. 1012957
District of Columbia
441 Fourth Street, N.W., 6th Floor
Washington, D.C.  20001
Tel: (202) 724-6610
william.causey@dc.gov
matthew.blecher@dc.gov

*Counsel for the District of Columbia*

Respectfully submitted,

Michael S. McNamara by /s/ Clare M. Cavaliero
Michael S. McNamara, D.C. Bar No. 493773
Gerald Zingone, D.C. Bar No. 396604
Clare M. Cavaliero, D.C. Bar No. 1029442
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, N.W.
Washington, D.C.  20036
michael.mcnamara@pillsburylaw.com
clare.cavaliero@pillsburylaw.com

*Counsel for Defendants Hoffman-Madison
Waterfront LLC and Wharf Horizontal REIT
Leaseholder LLC*