## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WHARF, INC., *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>DISTRICT OF COLUMBIA, *et al..*,<br><br>                Defendants. | Civil Action No. 15-1198 (CKK) |

## MEMORANDUM OPINION
(January 12, 2017)

Plaintiffs filed suit on July 23, 2015, against the District of Columbia ("the District") as well as Hoffman-Madison Waterfront, LLC ("HMW") and Wharf Horizontal REIT Leaseholder, LLC ("WHRL"), collectively, the "Developer Defendants." Plaintiffs allege that the Developer Defendants violated the terms of the parties' lease agreements, and that the District violated the Takings Clause of the Fifth Amendment by impeding access to the leased property. On May 9, 2016, Defendant WHRL filed its First Amended Counterclaim against Plaintiffs for unjust enrichment, *quantum meruit*, and ejectment under a theory of breach of contract or, in the alternative, as tenants at sufferance.

Presently before the Court are: Plaintiffs' [61] Motion to Dismiss Wharf Horizontal REIT Leaseholder LLC's Amended Counterclaims; Developer Defendants' [58] Motion to Strike Plaintiffs' Demand for Jury Trial; Defendants' [57] Motion to Set a Rule 16 Initial Scheduling Conference; and Plaintiffs' [62] Motion for Leave to File a Surreply to Developer Defendants' Reply in Further Support of their Motion to Set a Rule 16 Initial Scheduling Conference. Upon

consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court:

DENIES Plaintiffs' [61] Motion to Dismiss Wharf Horizontal REIT Leaseholder LLC's Amended

Counterclaims; DENIES WITHOUT PREJUDICE Developer Defendants' [58] Motion to Strike

Plaintiffs' Demand for Jury Trial; DENIES AS MOOT Defendants' [57] Motion to Set a Rule 16

Initial Scheduling Conference; and DENIES AS MOOT Plaintiffs' [62] Motion for Leave to File

a Surreply to Developer Defendants' Reply in Further Support of their Motion to Set a Rule 16

Initial Scheduling Conference for the reasons described herein.

## I. BACKGROUND

### A. Factual Background

By way of background, the Court shall briefly set out the facts as alleged in Plaintiffs' First

Amended Complaint, reserving further presentation of the facts alleged in WHRL's First Amended

Counterclaim for the discussion of the individual issues below.  This case concerns the Municipal

Fish Market located at 1100 Maine Avenue, S.W., Washington, D.C. ("Municipal Fish Market" or

"the Market").  Compl. ¶ 1.  Plaintiffs, Wharf, Inc. ("The Wharf"), BRW, Inc. ("Captain White"),

---

[1] While the Court bases its decision on the record as a whole, its consideration has focused on the following documents: 1st Am. Compl. ("Compl."), ECF No. [17]; 1st Am. Counterclaim, ECF No. [56]; Pls.' Mot. to Dismiss WHRL's Am. Counterclaims ("Pls.' Mot. to Dismiss"), ECF No. [61]; Def./Counterclaim-Pl. WHRL's Br. in Opp'n to Pls.' Mot. to Dismiss WHRL's First Am. Compl. ("WHRL's Opp'n to Pls.' Mot. to Dismiss"), ECF No. [64]; Pls.' Reply Mem. in Supp. of Pls.' Mot. to Dismiss WHRL's 1st Am. Counterclaim ("Pls.' Reply to Mot. to Dismiss"), ECF No. [66]; Developer Defs.' Mot. to Strike Pls.' Demand for a Jury Trial ("Developer Defs.' Mot. to Strike Jury Demand"), ECF No. [58]; Pls.' Resp. to Developer Defs.' Mot. to Strike Pls.' Demand for a Jury Trial ("Pls.' Resp. to Developer Defs.' Mot to Strike Jury Demand"), ECF No. [65]; Developer Defs.' Reply in Supp. of Their Mot. to Strike Pls.' Jury Demand ("Developer Defs.' Reply to Mot. to Strike Pls.' Jury Demand"), ECF No. [67]; Defs.' Mot. to Set a R. 16 Initial Sch. Conf., ECF No. [57]; Pls.' Opp'n to Defs.' Mot. to Set a R. 16 Initial Sch. Conf., ECF No. [59]; Defs.' Reply in Further Supp. of Their Mot. to Set R. 16 Initial Sch. Conf., ECF No. [60]; Pls.' Mot. for Lv. to File a Surreply to Defs.' Reply in Further Supp. of Their Mot. to Set R. 16 Initial Sch. Conf., ECF No. [62].  These motions are fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering its decision. *See* LCvR 7(f).

and Salt Water Seafood, Inc. ("Salt Water"), run three seafood businesses in the Municipal Fish Market and bring this action as lessees of property located within the Market. *Id.* ¶ 2. Each of the Plaintiffs' businesses is owned and operated by members of the White family. *Id.* ¶ 34. Defendants are the District of Columbia ("the District"), the original lessor of the property at issue, and the Developer Defendants HMW and WHRL, the private entities to which the District assigned its rights to the leases in question in 2014. *Id.* ¶¶ 1, 44.

The commercial leases at issue are: the agreement entered into by The Wharf and the District dated July 12, 2000, *id.* ¶ 35; the agreement entered into by Captain White and the District dated July 12, 2000, *id.* ¶ 37; and the agreement originally entered into by Pruitt's Seafood, Inc., and the District dated April 1, 2001, and subsequently assumed by Salt Water (allegedly then doing business as W.D., Inc.) from DNM Seafood, Inc. on March 20, 2014, with the consent of then-lessor, the District, *id.* ¶ 40, Ex. D. The term of the lease agreements at issue is defined as "[t]he period that begins on the Commencement Date and ends thirty (30) Lease Years after the New Rent Commencement Date, unless sooner terminated pursuant to this Lease." [2] *Id.*, Ex. A at 7; *id.*, Ex. C at 6; *id.*, Ex. D at 16.[3] On April 23, 2014, the District assigned the leases at issue to Developer Defendants. *Id.* ¶ 44. Plaintiffs allege that Developer Defendants breached the terms of their lease agreements and otherwise interfered with their use of the leased property. *See generally id.* ¶¶ 91-160.

---

[2] A court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint.'" *See, e.g., Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

[3] Page numbers for exhibits attached to the Complaint refer to the numbers automatically assigned to the documents as they were filed in ECF.

In their Complaint, Plaintiffs raise one claim against the District, a Fifth Amendment Takings Clause claim (Count I), related to access to the leased property.  Plaintiffs also raise eight state and common law claims against the Developer Defendants: declaratory judgment (Count II); specific performance and injunctive relief based on breach of lease (Count III); damages based on breach of lease (Count IV); breach of the covenant of good faith and fair dealings (Count V); trespass and conversion (Count VI); nuisance (Count VII); tortious interference with prospective business advantage (Count VIII); and unjust enrichment (Count IX).  Plaintiffs "request a jury trial for the appropriate claims for which a jury is permissible."  Compl. at 38.  Defendants now move the Court to strike Plaintiffs' jury demand on the grounds that the lease agreements contain a binding waiver of jury trial.

Defendant WHRL filed its First Amended Counterclaim against Plaintiffs.  Specifically, WHRL seeks to recover from Plaintiffs on the ground of unjust enrichment and *quantum meruit*.  Defendant WHRL also asserts that it is entitled to immediate possession of the leased premises either on the grounds of breach of contract or because Plaintiffs are tenants at sufferance.  Plaintiffs now seek to dismiss all of WHRL's counterclaims against them.

### B.  Procedural Background

On August 12, 2015, Plaintiffs filed a Motion for Preliminary Injunction against Developer Defendants based on the Developer Defendants' alleged breaches of the parties' lease agreements.  Specifically, Plaintiffs sought an order from the Court directing Developer Defendants to: (1) cease further construction and encroachments onto the Common Area of the Municipal Fish Market without meeting the conditions precedent in the Lease Agreements; and (2) to leave Plaintiffs to quietly enjoy their leased property by ending their wrongful efforts to evict Plaintiffs through proceedings in the Superior Court of the District of Columbia and otherwise harass Plaintiffs.

Plaintiffs also requested that this Court stay the pending eviction proceedings in the Superior Court of the District of Columbia.[4]

On August 13, 2015 and August 19, 2015, respectively, Developer Defendants and the District filed motions to dismiss Plaintiffs' First Amended Complaint.  Defendants asserted that Plaintiffs did not hold valid leases to the property in question because the leases were terminated. As such, the Developer Defendants contended that the Court should dismiss Plaintiffs' claims against them in their entirety.  Developer Defs.' Mot. to Dismiss at 6, ECF No. [20-1].  The District also asserted that Plaintiffs did not have legally enforceable interests in the property and, consequently, could not establish that the District had taken their property without just compensation.  Def. D.C.'s Mot. to Dismiss at 6, ECF No. [25-1].  Alternatively, the District argued that Plaintiffs' Takings Clause claim was time-barred by the applicable statute of limitations.  *Id.* at 4-6.

On September 28, 2015, the Court issued two Memorandum Opinions and Orders denying the motions to dismiss filed by the District and the Developer Defendants as well as Plaintiffs' motion for a preliminary injunction. Notably, the Court found that the language of the lease agreements was ambiguous and susceptible to different interpretations, one which would render the leases valid at this time and one which would render the leases expired.  As such, the Court explained: "In order to determine the appropriate interpretation of the ambiguous provision, the Court must examine the parties' intention in light of the circumstances surrounding their execution of the agreements and/or by applying rules of construction."  *Wharf, Inc. v. District of Columbia*,

---

[4] The eviction proceedings in the Superior Court of the District of Columbia subsequently were voluntarily dismissed without prejudice by WHRL. WHRL's Opp'n to Pls.' Mot. to Dismiss at 12 n.10.

133 F. Supp. 3d 29, 42 (D.D.C. 2015).   The Court shall summarize the basis for this holding because it is relevant to the Court's analysis of the instant motions.

In reaching this holding, the Court focused on the operation of two different lease provisions.    As the Court explained, the parties' lease agreements contemplate two distinct time periods in the lease, one occurring prior to the completion of the "Landlord's Work" and one commencing upon completion of the "Landlord's Work." *See* Compl., Ex. A at 4-5; *id.*, Ex. C at 4-5; *id.*, Ex. D at 14-15.   Specifically, the leases set annual minimum rent "Before New Rent Commencement Date" and the annual minimum rent "After New Rent Commencement Date." *Id.*, Ex. A at 4-5; *id.*, Ex. C at 4-5; *id.*, Ex. D at 14-15.   The "New Rent Commencement Date" is the date upon which the "Landlord's Work" is substantially completed, as signaled by the receipt of a Certificate of Substantial Completion from the Corps of Engineers.   *Id.*, Ex. A at 5; *id.*, Ex. C at 5; *id.*, Ex. D at 15.   The "Landwork's Work" is defined in the lease agreements as certain improvements that the parties agree should be made to the Municipal Fish Wharf with $3,000,000 appropriated from the federal government and from other sources of funding available to the landlord.   *Id.*, Ex. A at 8-9; *id.*, Ex. C at 8; *id.*, Ex. D at 17-18.   The lease agreements further provided that: "Landlord shall use reasonable commercial efforts to complete Landlord's Work by June 30, 2001, but shall have no liability to Tenant if it is unable to complete Landlord's Work by that date or by any other date."   *Id.*, Ex. A at 9 (emphasis added); *id.*, Ex. C at 8 (emphasis added); *id.*, Ex. D at 18 (emphasis added).

Here, the parties agree that the Landlord's Work has not been completed.   In light of this fact, the parties presented different arguments in their briefing on the motions to dismiss about the operation of Provision 38.E of the leases that provides:

> **Rule Against Perpetuities.** Notwithstanding any provision in this Lease to the contrary, if the Lease Term has not commenced within three (3) years after the date

> of this Lease, this Lease shall automatically terminate on the third (3rd) anniversary
> of the date hereof. The sole purpose of this provision is to avoid any possible
> interpretation that this Lease violates the Rule Against Perpetuities or other rule of
> law against restraints on alienation.

*Id.*, Ex. A at 26; *id.*, Ex. C at 24; *id.*, Ex. D at 34.  In their motion to dismiss, Developer Defendants

asserted that this provision provides that the leases would terminate if after three years of the date

of their execution, the New Rent Commencement Date had not been triggered by the completion

of the Landlord's Work.  As such, it was the Developer Defendants' contention that the leases

expired in light of the fact that the Landlord's Work was not completed within three years of the

execution the lease.  Plaintiffs argued that the provision provides that the leases would terminate

if the "Lease Term," or the date of the lease agreement, had not commenced within three years.

While "Lease Term" was not defined in the lease, "Term" is defined as "[t]he period that begins

on the Commencement Date and ends thirty (30) Lease Years after the New Rent Commencement

Date, unless sooner terminated pursuant to this Lease." *Id.*, Ex. A at 7; *id.*, Ex. C at 6; *id.*, Ex. D at

16.  The "Commencement Date" is defined as "[t]he date of this lease."  *Id.*, Ex. A at 4; *id.*, Ex. C

at 4; *id.*, Ex. D at 14.  As such, it was Plaintiffs' position that the "Lease Term" commenced on

the date of each lease and, accordingly, the three commencement dates fall within the three-year

window provided by Provision 38.E.

     The Court found that Provision 38.E is ambiguous and that each party offered a reasonable

interpretation of the provision.  The Court declined to interpret Provision 38.E at this early stage

of the proceeding, noting "'interpretation of ambiguous contract language, particularly if it

requires consideration of extrinsic evidence, is a question of fact . . . .'"  *Wharf, Inc.*, 133 F. Supp.

3d at 42 (quoting *Flynn v. Dick Corp.*, 481 F.3d 824, 831 n.7 (D.C. Cir. 2007)).  The Court further

summarized its holding in addressing Plaintiffs' motion for a preliminary injunction:

> [T]he Court left open the issue of whether Plaintiffs have valid leasehold interests in the property at issue until the factual record in this action is further developed. Relatedly, the Court has not yet addressed the merits of either party's arguments regarding the alleged breaches of the lease agreements or Plaintiffs' argument that if the leases have terminated, then the Court should apply certain equitable principles. In sum, the Court's only holding at this time with respect to the parties' lease agreements is that the language of Provision 38.E is ambiguous.

Mem. Op. (Sept. 28, 2015), at 6, ECF No. [47].  The Court now turns to the parties' instant motions.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  Further, in deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).   The same standards govern a motion to dismiss with respect to an opposing party's counterclaims. *See Ellipso, Inc. v. Mann*, No. 05-1186, 2006 WL 1126814, at *1 (D.D.C. Apr. 27, 2006).

## III. DISCUSSION

### A.  Plaintiffs' Motion to Dismiss WHRL's Amended Counterclaims

WHRL advances four counterclaims against Plaintiffs, three of which are premised on WHRL's contention that the lease agreements at issue are no longer valid.   WHRL advances two theories under which these leases would be terminated: (1) the leases were void *ab initio* because the terms of the leases exceed the Mayor's authority; and (2) the leases were terminated no later than 2004 by the operation of Provision 38.E.   Based on this premise, WHRL raises three quasi-contract claims seeking equitable relief in quasi-contract: unjust enrichment (Count I); *quantum meruit* (Count II); and tenants at sufferance (Count VI).   In the alternative, WHRL contends that if the Court finds the leases are valid, WHRL is entitled to relief under its breach of contract claim (Count III).   WHRL seeks to recover monetary damages for all of its claims and also requests Plaintiffs' ejectment from the property at issue under alternative theories based in contract (Count III) and in equity (Count IV).

Plaintiffs argue that WHRL's counterclaims should be dismissed because WHRL: (1) misconstrues the leases and the law to erroneously conclude that the leases expired or that the leases were void *ab initio*; (2) fails to sufficiently plead that Plaintiffs breached the lease agreements either because WHRL failed to provide a sufficient factual basis to satisfy the pleading

standards and/or because the alleged actions, even if true, would not constitute breaches under the leases or were remedied by Plaintiffs; (3) neglects to consider that certain provisions of the leases survive and govern the parties' relationship even if the leases themselves are no longer valid; (4) sets forth claims that are time barred; (5) improperly bases its quasi-contract claims on the premise that it made improvements and provided maintenance to the property; and (6) requests relief that cannot by granted by this Court under District of Columbia law.  The Court shall address each argument in turn.

1. *Validity of the Leases*

The Court shall not reconsider Plaintiffs' assertion that the leases did not expire by operation of Provision 38.E for the reasons already discussed by the Court in ruling on Defendants' motions to dismiss.  Indeed, in ruling on those motions, the Court specifically held that Provision 38.E is ambiguous and both parties advanced reasonable interpretations of the Provision, one which would render the leases valid and one which would render the leases expired.  The Court expressly declined to interpret Provision 38.E at the motion to dismiss stage and explained that this issue would best be decided on an expanded factual record.  The Court finds no reasons to disturb that ruling at this time, particularly when the factual record remains largely the same because the parties have not yet engaged in discovery.[5]  As such, the Court declines to dismiss WHRL's quasi-contract claims on the grounds that the leases did not expire by operation of

---

[5] The Court referred this matter to mediation from October 22, 2015, through March 15, 2016, after ruling on Defendants' motions to dismiss and Plaintiffs' motion for a preliminary injunction.  After mediation was unsuccessful, Defendants filed their Answers to the Amended Complaint and their Counterclaims.  The parties' subsequently filed motions and related briefing thereto currently pending before the Court.

Provision 38.E because WHRL has set forth a plausible claim as to the alleged termination of the leases.[6]

### 2. *Plaintiffs' Alleged Breaches of the Lease Agreements*

In its First Amended Counterclaim, WHRL alleges fifteen breaches to the leases committed by Plaintiffs.  1st Am. Counterclaim ¶¶ 47-139.  However, Plaintiffs argue that all of the breaches alleged by WHRL are either: (1) not sufficiently pled; or (2) are not breaches at all under the terms of the lease.  For the reasons described herein, the Court finds that WHRL has sufficiently pled the breaches at issue in its First Amended Counterclaim.  Furthermore, the Court finds no basis to dismiss WHRL's claims at this juncture based on Plaintiffs' representations that the conduct at issue does not constitute breaches under the lease agreements.

Turning first to Plaintiffs' allegation regarding the sufficiency of the pleadings, Plaintiffs assert that six of the alleged breaches are not factually supported.  Pls.' Reply to Mot. to Dismiss at 8 n.4; *see also* Pls.' Mot. to Dismiss at 10-24.  The Court shall address each alleged breach as set forth in the First Amended Counterclaim in turn.  First, WHRL asserts that Plaintiffs breached the lease by "repeatedly permitt[ing] their employees to park in the customer parking spaces in the Common Area of the Fish Market since at least April 23, 2014, and continue to permit their employees to park in the Fish Market Common Area."  1st Am. Counterclaim ¶ 77.  Second, WHRL asserts that Plaintiffs "have not properly protected their barges from the entry of animals,

---

[6] WHRL provides an alternative basis for its quasi-contract claims, arguing that the leases were void *ab initio* because the Mayor of the District of Columbia exceeded the authority vested in him pursuant to the D.C. Appropriations Act of 2001, Pub. L. No. 106-522, § 162(a), 114 Stat. 2484, at 2484–85 (2000), by entering into leases for a term of more than 30 years.  1st Am. Counterclaim ¶¶ 27-32.  Plaintiffs contend that "[g]iven the history of the negotiation [surrounding the leases], this claim is implausible."  Pls.' Mot. to Dismiss at 9.  The Court declines to reach this argument setting forth an alternative basis under which the leases may no longer be valid at this time because it already has determined that WHRL has alleged plausible claims in quasi-contract based on its theory that the leases terminated by operation of Provision 38.E.

which is a violation of Title 25 of the D.C. Municipal Regulations and of the purported leases." *Id.* ¶ 102.  Third, WHRL argues that "[t]he horizontal space occupied by the barges and floating docks located in Premises Nos. 2, 16, and 17 exceeds the space permitted by the alleged leases, for which the Landlord has not given its consent, and therefore constitutes a default under Sections 1.J and 13 of the purported leases." *Id.* ¶ 207.  Moreover, WHRL alleges that the horizontal space occupied by these specified barges and floating docks still exceeded the space permitted under the alleged leases on April 17, 2016, the date that WHRL asserts the 30-day cure period expired.  *Id.* ¶ 208.  Fourth, WHRL asserts that "[a]s of April 17, 2016, . . . [Plaintiffs] were continuing to leave conditions that were dirty and full of rubbish throughout the Premises and the Common Area."  *Id.* ¶ 214.  Fifth, WHRL alleges that "[a]s of April 17, 2016, . . . . [Plaintiffs left] objects and equipment, such as forklifts, carts, pallets, baskets, empty boxes, and barrels in the Common Area, in violation of the Rules and Regulations."  *Id.* ¶ 220.  Finally, WHRL asserts that Plaintiffs have "repeatedly place[d] signs and displays in the Common Area including 'sandwich board'-style signs, which are explicitly prohibited by the Rules and Regulations." *Id.* ¶ 132.  WHRL argues that Plaintiffs "claim that they have cured this default by removing all sandwich board-style signs," *id.* ¶ 222, but Plaintiffs "continued to place other types of signs and displays in the Common Area," *id.* ¶ 223.  Upon review of the First Amended Counterclaim, the Court finds that WHRL has sufficiently pled each of these claims to survive a motion to dismiss.  As set forth above, WHRL has alleged sufficient facts which, if accepted as true, state a plausible claim and provides Plaintiffs with adequate notice of WHRL's claims.[7]  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

---

[7] While Plaintiffs assert that WHRL incorrectly argued that breach of contract claims are subject to a lower pleading standard, here the Court has reviewed WHRL's First Amended Counterclaim in light of the standard set forth in *Twombly*.  *See* Pls.' Reply to Mot. to Dismiss at 7.

at 570) (Under Federal Rule of Civil Procedure 8(a), a court is authorized to dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ("The purpose of . . . [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.").

Plaintiffs next argue that the Court should dismiss certain claims raised by WHRL because the alleged conduct does not constitute breaches under the terms of the lease agreements.[8]  The Court has reviewed Plaintiffs' arguments with respect to the breaches alleged by WHRL and finds that Plaintiffs have not presented a basis for the Court to dismiss the counterclaims for two reasons. First, Plaintiffs appear in several instances to request that the Court accept as true facts outside of the pleadings to make a determination that Plaintiffs' conduct does not constitute breaches of lease agreements.  Second, the Court has yet to determine the scope of the parties' rights, if any, under the lease agreements.  Here, WHRL has sufficiently alleged specific conduct that it asserts violates

---

[8] Specifically, Plaintiffs argue the following are not breaches under the terms of the lease agreements:

(1) Plaintiff Saltwater's alleged unpermitted construction; (2) Plaintiffs' alleged failure to carry insurance; (3) Plaintiffs' alleged permitting employees to park in the Common Area (to the extent WHRL alleges contractors and dumpsters parked in the Common Area); (4) Plaintiffs' alleged operation of a wholesale business; (5) Plaintiff The Wharf's alleged operation of a dining barge; (6) Plaintiffs' alleged sale of soda and fried chicken; (7) Plaintiffs' alleged horizontal expansion of their barges (to the extent expansion of Barge 2 is alleged); (8) Plaintiff Saltwater's allegedly unconsented installation of a sign; (9) that Plaintiffs have left the property unclean (to the extent the allegations extend to the cleanliness of the Common Area); (10) Plaintiffs alleged failure to operate businesses in the Premises; and (11) Plaintiffs' trucks allegedly acting as advertisements.

Pls.' Reply to Mot. to Dismiss at 9-10 n.5*; see also* Pls.' Mot. to Dismiss at 10-24.

particular lease provisions such that it may survive a motion to dismiss.  The Court notes that it declines at this time to provide an exacting interpretation of each of the lease provisions when it is unclear whether the lease agreements are even valid in light of the ambiguity of Provision 38.E. Moreover, if the Court determines that the lease agreements are still valid and binding on the parties, it would benefit from a more complete factual record related to the conduct at issue to make a determination if the conduct constitutes breaches.  In sum, the Court finds no grounds to dismiss WHRL's counterclaims at this juncture based on Plaintiffs' assertions that WHRL failed to plead sufficient facts to support its breach of contract claims or Plaintiffs' assertions that the conduct at issue does not constitute breaches under the provisions of the lease agreements.

### 3.   *Holdover Provisions of the Lease Agreements*

Next, Plaintiffs contend that WHRL cannot maintain quasi-contract claims against them because even if the lease agreements have expired, the parties are still bound by the holdover provision of the leases and that provision dictates any damages that WHRL may recover.  The provision at issue provides:

> If Tenant lawfully remains in possession of the Premises after the expiration of the Term, Tenant shall be a tenant from month to month, upon all the terms hereof which are not inconsistent with such tenancy; provided, however, that Tenant covenants to pay to Landlord as Minimum Rent during such tenancy one hundred fifty percent (150%) of the Minimum Rent in effect immediately before expiration of the Term, in addition to all other rent and other charges due hereunder. Such tenancy may be terminated by Landlord or Tenant upon thirty (30) days notice.

Compl., Ex. A at 17; *id.*, Ex. C at 18; *id.*, Ex. D at 28.  As an initial matter, the Court notes that it has not reached the issue of whether the leases are binding at this time.  However, while Plaintiffs assert that even if the leases expired or were *void ab initio*, that the holdover provision would still bind the parties, it is not entirely clear from the language of the Provision that it would be in force and would govern the parties' relationship.  As such, the Court declines to dismiss WHRL's quasi-

contract claims on the grounds that the holdover provisions of the lease agreements would dictate the confines of the parties' relationship if the leases are no longer valid.[9]   Plaintiffs are not precluded from raising this argument at a later stage in the proceeding if they deem it necessary. However, based on this record, the Court cannot conclude that this argument serves as a basis to dismiss WHRL's quasi-contract claims against Plaintiffs.

4.   *Statute of Limitations*

Next, Plaintiffs contend that WHRL cannot maintain any claims in quasi-contract because such claims are barred by a three-year statute of limitations.   Specifically, Plaintiffs argue that WHRL advanced a theory that the lease expired in 2003 or 2004, or earlier, and that WHRL's unjust enrichment and *quantum meruit* claims accrued at that time.   It is Plaintiffs' position that WHRL's claims are subject to a three-year statute of limitations and, accordingly, are time-barred.[10]   WHRL disputes this contention, noting that its legal interest in the property at issue was first conveyed to it by the District of Columbia in April 2014 and that it is not seeking any compensation for the period prior to that time.

---

[9] The Court notes that it has reviewed the cases cited by Plaintiffs in support of their contention that the provision would be binding even if it finds that the leases terminated by operation of Provision 38.E or that they were void *ab initio*.   However, none of these cases appear to bind the Court to Plaintiffs' interpretation of the holdover provision at issue.   *See generally Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517 (D.C. Cir. 2009) (discussing the applicability of an arbitration clause in an agreement);   *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58 (D.C. 2005) (holding that an unjust enrichment claim should be dismissed because one party was not unjustly enriched);   *Grimes v. Newsome*, 780 A.2d 1119 (D.C. 2001) (addressing the issue of whether the notice to correct or vacate month-to-month tenants was sufficient); *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81 (D.C. 1994) (holding that a party who did not raise a *quantum meruit* claim in the complaint because it relied on its contention that an express contract was binding, could not add a *quantum meruit* claim as an alternative basis for a claim through a pretrial statement or pretrial order).

[10] WHRL does not concede that the statute of limitations period is three years, but the Court need not reach that issue because WHRL has advanced plausible claims that are not conclusively barred even under a three-year statute of limitations.

Here, Plaintiffs have failed to show that WHRL's claims are conclusively time-barred and, as such, the Court must deny their request for a dismissal of the counterclaims based on a statute of limitations argument.  First, WHRL contends that it did not have an enforceable interest in the property until April 2014, less than two years before WHRL first raised its counterclaims against Plaintiffs.  *See* Developer Defs.' Answer to Pls.' 1st Am. Compl. & Counterclaim, ECF No. [54]. Second, the parties dispute the import of the District of Columbia Court of Appeals' opinion in *News World Communications, Inc. v. Thompsen*, 878 A.2d 1218 (D.C. 2005), to the statute of limitations issue related to WHRL's quasi-contract claims in the instant action.  Plaintiffs assert that WHRL's quasi-contract claims are barred under *News World Communications*, because such claims begin to run "when the enrichment actually becomes unlawful."  Pls.' Mot. to Dismiss at 24 (quoting *News World Commc'ns, Inc.*, 878 A.2d at 1225).  However, as WHRL properly notes, the court in *News World Communications* explained: "[T]he statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld."  878 A.2d at 1219; *see also* Def.'s Opp'n to Pls.' Mot. to Dismiss at 7.  Here, it is WHRL's position that it first rendered "services" that conferred a benefit upon Plaintiffs in April 2014.

Notably, *News World Communications* was decided on a fully developed record after trial by the D.C. Court of Appeals.  As this Court noted in its earlier opinion, "Because statute of limitations defenses often are based on contested facts, the court should be cautious in granting a motion to dismiss on such grounds; 'dismissal is appropriate only if the complaint on its face is conclusively time-barred.'" *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  Here, the Court finds, without deciding, that WHRL has presented a plausible argument that its claims are not barred by the

statute of limitations and Plaintiffs have not responded to this argument in their reply brief.  As such, the Court shall deny Plaintiffs' request to dismiss WHRL's quasi-contract claims on the basis that they are time-barred under the statute of limitations.

### 5.   *WHRL's Alleged Improvement and Maintenance*

WHRL alleges that it is currently undertaking construction work that includes, among other things, making certain improvements to the property outlined in the Land Disposition Agreement ("LDA") between WHRL and the District at WHRL's "sole cost and expense."   1st Am. Counterclaim ¶¶ 11-12.   WHRL outlines in detail the alleged improvements that it made the property since April 2014, including: building a new, signalized intersection at Maine Avenue including a dedicated left-hand turn lane and temporary access while the intersection was being built, *id.* ¶¶ 42-44; utility work, *id.* ¶ 45(a); upgrading and installing site lighting, *id.* ¶ 45(b); improving landscaping, *id.* ¶ 45(c); construction of expanded parking spaces, *id.* ¶ 45(d); demolition and reconstruction of the Maine Avenue sidewalk, *id.* ¶ 45(e); construction of public restrooms, *id.* ¶ 45(f); and the addition of dedicated directional and informational signs for the Fish Market, *id.* ¶ 45(g).   In its unjust enrichment claim, WHRL asserts that it conferred a benefit on Plaintiffs by permitting them to occupy the property and performing various improvements, and that Plaintiffs received "substantial windfalls" as the result of paying rent significantly below fair market value. *Id.* ¶¶ 232-33.   In its *quantum meruit* claim, WHRL asserts that it rendered valuable services to Plaintiffs by permitting Plaintiffs "to occupy the premises at the Fish Market, performing various maintenance functions for the Fish Market Common Area, and implementing various improvements to the Fish Market." *Id.* ¶ 237.   WHRL asserts that while Plaintiffs have accepted and enjoyed these services, WHRL expected to be paid these services and has not been

compensated.  *Id.* ¶¶ 238-40. These assertions underlie WHRL's counterclaims for unjust enrichment and *quantum meruit*.

Plaintiffs contend that the Court should dismiss these claims for several reasons.  First, Plaintiffs assert that they were not part of WHRL's negotiations with the District of Columbia when WHRL and the District entered into a LDA for the property at issue.  Second, Plaintiffs argue they "have not requested, and have repeatedly objected to, the Developer's activities, which constitute breaches of the Plaintiffs' leases."  Pls.' Mot. to Dismiss at 26.  Finally, Plaintiffs assert that the fact that WHRL agreed to undertake certain improvements at its "sole cost and expense" is fatal to its unjust enrichment and *quantum meruit* counterclaims.

Here, the Court concludes that WHRL has set forth plausible claims for unjust enrichment and *quantum meruit* and, as such, the Court shall not dismiss the claims based on this record.  As WHRL points out, Plaintiffs raise certain questions of fact:  whether the alleged benefits were wanted or requested; and whether Plaintiffs were on notice that WHRL expected payment.  These are issues that cannot be resolved at the motion to dismiss stage on this factual record.  Here, WHRL has sufficiently set out the alleged improvements that it asserts that it made to the property and alleged that Plaintiffs accepted these improvements and that WHRL expected compensation for these services.  Indeed, as WHRL notes, "it is, of course, possible for it to be true that WHRL agreed with the District of Columbia that the improvements and other benefits would be made at WHRL's sole cost and expense – as opposed to the cost and expense of the District of Columbia – and also true that WHRL expected to be compensated (or reimbursed) by the tenants at the Municipal Fish Market for those improvements and other benefits."  WHRL's Opp'n to Pls.' Mot.

to Dismiss at 10-11.  As such, the Court shall deny Plaintiffs' request that the Court dismiss

WHRL's unjust enrichment and *quantum meruit* counterclaims for the reasons described above.[11]

      6.  *WHRL's Request for Ejectment*

Finally, WHRL seeks the ejectment of Plaintiffs from the property based on a theory of

breach of contract (Count III) or, in the alternative, tenants at sufferance (Count IV).  In addition

to seeking ejectment, WHRL also seeks monetary damages under both counterclaims.  Plaintiffs

contend that the WHRL cannot maintain an action requesting ejectment because the Superior Court

of the District of Columbia possesses sole jurisdiction to hear eviction actions.[12]  As an initial

matter, the Court notes that Plaintiffs' argument takes issue with one portion of the remedies

---

[11] The Court notes that it is not persuaded by Plaintiffs' reliance on the D.C. Court of Appeals' decision in *Steuart Investment Co. v. The Meyer Group, Ltd.*, 61 A.3d 1227 (D.C. 2013), in support of its argument for two reasons.  First, as Plaintiffs note, the *Steuart* court expressly declined to reach the unjust enrichment claim.  61 A.3d at 1237.  Second, and more importantly, the *Steuart* court analyzed the issue of whether a commercial real estate broker and a landlord had an implied-in-fact contract based on a factual record that had been fully developed through a two-day bench trial.  *Id.* at 1230.  The Court similarly finds Plaintiffs' reliance on *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22 (D.D.C. 2013), unpersuasive. In *Geier*, another district court in this jurisdiction dismissed an unjust enrichment claim finding in part that the plaintiffs had not alleged facts showing that they could have reasonably expected non-signatories of a consulting agreement to pay them as one basis for dismissing the claim.  983 F. Supp. 2d at 41.  In that case, plaintiffs sought to recover fees and costs for work they completed after they were retained to provide consulting services in support of petitions brought under the National Childhood Vaccine Injury Compensation Act in the U.S. Court of Federal Claims.  The Court of Federal Claims declined to award the costs and fees requested by the plaintiffs and the plaintiffs brought the action in *Geier* against law firms that represented plaintiffs in the earlier case.  Notably, the consulting agreement at issue provided that the plaintiffs would be paid out of the National Childhood Vaccine Injury fund which the Court of Federal Claims declined to award based on the work provided by the plaintiffs.  *See id.* at 28.  The court's analysis in that case took into consideration the prior proceedings in the Court of Federal Claims as well as the specific language of the consulting agreement at issue.  Here, as described above, the Court finds that WHRL has provided sufficient facts to make out plausible unjust enrichment and *quantum meruit* claims.

[12] Plaintiffs' argument is based on the language of D.C. Code § 42-3210, which the Court has reviewed.  The Court also has reviewed the parties' briefing on this issue which presents different interpretations of the statute at issue.  However, the Court declines to reach the merits of the parties' arguments for the reasons described above.

WHRL seeks under each of these counterclaims and even if Plaintiffs were to prevail on this argument, it would not dismiss either of the counterclaims in their entirety.  Further, the Court need not address what remedies are appropriate at this time given that it has only determined that the parties have pled sufficient claims and counterclaims to survive a motion to dismiss.  As such, to determine what remedies a party is entitled to at this juncture would constitute an advisory opinion.  Plaintiffs are not precluded from raising this argument at a later time if WHRL succeeds on either Count III or Count IV of its counterclaims.[13]

### B.  Developer Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial

By separate motion, Developer Defendants request that the Court strike Plaintiffs' demand for a jury trial in light of the "Waiver of Jury Trial" provision of the lease agreements that provides:

> Landlord and Tenant hereby waive all right to trial by jury in any claim, action, proceeding or counterclaim by either Landlord or Tenant against the other pertaining to any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, or Tenant's use of the Premises.

Compl, Ex. A at 23; *id.*, Ex. C at 21; *id.*, Ex. D at 31.  Developer Defendants argue that all of Plaintiffs' claims arise out of or concern Plaintiffs' assertion that they have a valid leasehold interest in the property and, accordingly, Plaintiffs are bound by the jury trial waiver.  Plaintiffs raise a host of arguments in response to Developer Defendants' request which the Court declines to reach at this time.  As previously discussed, the Court has yet to determine whether or not the lease agreements are valid and binding on the parties at this time in light of the ambiguity in Provision 38.E.  Consistent with the Court's ruling on a host of other issues raised by the parties, the Court shall decline to determine at this juncture whether or not Plaintiffs are entitled to a jury

---

[13] To the extent that Plaintiffs argue that WHRL has not sufficiently alleged facts supporting the materiality of the alleged breaches, the Court has determined that WHRL has sufficiently pled counterclaims to survive a motion to dismiss as described above. *See* Section III.A.2.

trial or whether they have waived that right.  Rather, it is the Court's view that this determination, if necessary, is best made once the parties' rights and claims are more fully ascertained on an expanded factual record.  Accordingly, the Court shall deny without prejudice Developer Defendants' request that the Court strike Plaintiffs' jury trial demand.  Developer Defendants are not precluded from raising this issue at a later time, if necessary, in advance of trial.

### C.  Defendants' Motion to Set a Rule 16 Initial Scheduling Conference

Finally, Defendants request that this Court set this matter for an Initial Scheduling Conference and Plaintiffs filed a related motion requesting leave to file a surreply to Defendants' pending motion.  The Court shall set a date for Plaintiffs to file their Answer to Defendants' counterclaims and, by separate order, the Court shall set this matter for an Initial Scheduling Conference.  As such, the Court shall deny as moot both Defendants' motion requesting that the matter be set for an Initial Scheduling Conference and Plaintiffs' motion to file a surreply with respect to this request.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that WHRL has sufficiently pled its counterclaims and DENIES Plaintiffs' [61] Motion to Dismiss Wharf Horizontal REIT Leaseholder LLC's Amended Counterclaims.  The Court also DENIES WITHOUT PREJUDICE Developer Defendants' [58] Motion to Strike Plaintiffs' Demand for Jury Trial as it has not yet determined the parties' rights, if any, pursuant to the terms of the lease agreements at issue. Finally, the Court DENIES AS MOOT Defendants' [57] Motion to Set a Rule 16 Initial Scheduling Conference and DENIES AS MOOT Plaintiffs' [62] Motion for Leave to File a Surreply to Developer Defendants' Reply in Further Support of their Motion to Set a Rule 16 Initial Scheduling Conference as the Court shall set an Initial Scheduling Conference by separate order.

An appropriate Order accompanies this Memorandum Opinion.

/s/
_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
