## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHARF, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 15-1198 (CKK) |
| DISTRICT OF COLUMBIA, *et al..*, | |
| Defendants. | |

## MEMORANDUM OPINION
(December 14, 2017)

Plaintiffs Wharf, Inc., ("The Wharf"), BRW, Inc. ("Captain White"), and Salt Water Seafood, Inc. ("Salt Water") (collectively, the "Plaintiffs") filed their initial suit on July 23, 2015, against the District of Columbia ("the District"), Hoffman-Madison Waterfront, LLC ("HMW") and Wharf Horizontal Reit Leaseholder, LLC ("WHRL") (HMW and WHRL are collectively referred to as the "Initial Developer Defendants"). *See generally* Compl., ECF No. 1. Plaintiffs alleged that the Initial Developer Defendants violated the terms of the parties' lease agreements, and that the District violated the Takings Clause of the Fifth Amendment by impeding access to the property leased to Plaintiffs at the Southwest Waterfront of the District of Columbia. *Id.*

The Initial Developer Defendants moved to dismiss the Complaint and Plaintiffs thereafter filed their First Amended Complaint, which all the defendants moved to dismiss. *See* Initial Developer Defs.' Mot. to Dismiss, ECF No. 20; District's Mot. to Dismiss, ECF No. 25. This Court denied both motions to dismiss, and the Initial Developer Defendants filed their Answer to the Plaintiffs' First Amended Complaint, in which Defendant WHRL also filed a counterclaim alleging that Plaintiffs breached their lease agreement and were unjustly enriched as a result of

WHRL's improvement of the premises. *See* Memorandum Opinion, ECF No. 45 and Order, ECF No. 44; Initial Developer Defs.' Answer and Countercl., ECF No. 54. WHRL filed a subsequent [74] unopposed motion for joinder to add Wharf Fish Market REIT Leaseholder LLC ("WFMRL") as an additional party, which was granted by the Court, with the effect that WFMRL was added as a Defendant and counterclaim Plaintiff.[1] *See* Order, ECF No. 75.

Plaintiffs moved for leave to file a Second Amended Complaint, which was consented to by the District, unopposed by the other three Defendants, and granted by the Court. *See* Pls.' Mot. for Leave to File Second Am. Compl., ECF No. 80; *see also* April 26, 2017 Minute Order. Plaintiffs' [82] Second Amended Complaint added the following Defendants: Wharf District GP Joint Venture LLC ("WDGJV"); Wharf Horizontal REIT, LLC ("WHR"); Hoffman-Struever Waterfront, LLC ("HSW"); and the Wharf District Joint Venture, L.P. ("WDJV") (collectively, the "New Developer Defendants"). Subsequently, the New Developer Defendants filed a [92] Motion to Dismiss the claims asserted against them in the Second Amended Complaint. This Court held in abeyance the New Developer Defendants' Motion to Dismiss and allowed the Plaintiffs to file a Third Amended Complaint. *See* Memorandum Opinion, ECF No. 103 and Order, ECF No. 102.

After Plaintiffs filed the sealed version of their [109] Third Amended Complaint, the New Developer Defendants filed the instant [114] Motion to Dismiss the Claims Asserted [against

---

[1] The District was the original lessor of the property at issue. WHRL and the District entered into a ground lease agreement, dated April 23, 2014, whereby the District leased to WHRL the Fish Market together with all development rights and entitlements for a 99-year term. On October 31, 2016, WHRL transferred its interest in the ground lease agreement to Wharf Fish Market REIT Leaseholder LLC. *See* Def. WHRL's [74] Unopp. Mot. to Add Countercl. Pl. and Def. at 2. Wharf Fish Market REIT Leaseholder, LLC ("WFMRL") is a limited liability company existing under Delaware law and transacting business in the District as the current landlord of the Municipal Fish Market tenants. *See* unsealed Third Amended Complaint, ECF No. 119 ("Third Am. Compl."), ¶¶ 26-27.

them] in the Third Amended Complaint, arguing that Plaintiffs have not asserted facts sufficient to establish a plausible relationship between the Initial Developer Defendants and the New Developer Defendants as alter egos or co-conspirators. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court DENIES the New Developer Defendants' Motion to Dismiss and lets stand the Plaintiffs' Third Amended Complaint for the reasons described herein.

## I. BACKGROUND

This case concerns the Municipal Fish Market located at 1100 Maine Avenue, S.W., Washington, D.C. ("Municipal Fish Market" or "the Market"). Third Am. Compl. ¶ 1. Plaintiffs run three seafood businesses in the Municipal Fish Market and bring this action as lessees of property located within the Market. *Id.* ¶ 2. As previously noted, Plaintiffs initially named as defendants the District, which was the original leaseholder for the properties, and HMW and WHRL, with WFMRL subsequently added as a defendant by WHRL (these three defendants are collectively referred to as "Initial Developer Defendants"). Plaintiffs' Second Amended Complaint also added WDGJV, WHR, HSW, and WDJV (collectively, the "New Developer Defendants") as additional defendants. *See* Second Am. Compl. ¶¶ 1, 23-29, 58 (noting that all the Developer Defendants are "affiliated" entities and further, that "the District assigned Plaintiffs'

---

[2] The Court has considered the following documents: Plaintiffs' Second Amended Complaint, ECF No. 82 ("Second Am. Compl."); the unsealed version of Plaintiffs' Third Amended Complaint, ECF No. 119 ("Third Am. Compl.") and the exhibits attached thereto; New Developer Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, ECF No. 114 ("New Devel. Defs.' Mot. to Dismiss"); New Developer Defendants' Memorandum in support of Motion to Dismiss, ECF No. 114-1 ("New Devel. Defs.' Mem."); an unsealed version of Plaintiffs' Memorandum of Points and Authorities in Opposition to New Developer Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, ECF No. 123 ("Pls.' Opp'n"); and New Developer Defendants' Reply Memorandum in support of Motion to Dismiss, ECF No. 121 ("New Devel. Defs.' Reply"). Because this Court relies on the unsealed versions of documents on the Court's docket, this Memorandum Opinion need not be filed under seal.

leases to [the] Developer Defendants, acting through WHRL[,] [which in turn] assigned the leases to WFMRL.")  The commercial leases at issue are: the agreement entered into by The Wharf and the District dated July 12, 2000; the agreement entered into by Captain White and the District dated July 12, 2000; and the agreement originally entered into by Pruitt's Seafood, Inc. and the District, and subsequently assumed by Salt Water (then doing business as W.D., Inc.) from DNM Seafood, Inc. on March 14, 2001, with the consent of then-lessor, the District.  Third Am. Compl. ¶¶ 47, 49, 51-52.

In their Third Amended Complaint, Plaintiffs include three claims against the District, including two Fifth Amendment Takings Clause claims (Counts I and II) and a violation of procedural due process claim (Count III). Plaintiffs also raise the following eight claims against all of the Developer Defendants: declaratory judgment (Count IV); specific performance and injunctive relief based on breach of lease (Count V); breach of lease (Count VI); breach of covenant of good faith and fair dealing (Count VII), trespass and conversion (Count VIII); nuisance (Count IX); tortious interference with prospective business advantage (Count X); and unjust enrichment (Count XI).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is "intended to test the sufficiency of the complaint." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 23 (D.D.C. 2002).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994) (citation omitted). In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III. DISCUSSION

Before discussing the allegations against the New Developer Defendants that are contained in Plaintiffs' Third Amended Complaint, it is perhaps useful to examine the triggering event that led the Plaintiffs to add these parties as defendants. Plaintiffs assert that "shortly after the parties commenced discovery in March 2017, Plaintiffs learned of the existence of additional, affiliated entities associated with the Wharf Project development." Pls.' Opp'n. at 2. This occurred after the Initial Developer Defendants produced to Plaintiffs an organizational chart, which not only showed that the New Developer Defendants owned and controlled or were owned and controlled by the Initial Developer Defendants but also that all defendants were "part of a complex,

interwoven corporate network — all working towards the development, financing, and construction of the Wharf Project." Pls.' Opp'n. at 2-3; *see* Fish Market Organizational Chart, ECF No.119-1, Ex. A. The Fish Market Organizational Chart begins with Initial Developer Defendant HMW, a joint venture and the developer selected for the redevelopment project at issue in this case, and it ends with the other Initial Developer Defendants — WHRL, a limited liability company and former landlord of the Plaintiffs, and WFMRL, a limited liability company and current landlord of the Plaintiffs. Following the Chart from start to finish necessitates movement through three levels of other organizations, all of whom are affiliated with the Initial Developer Defendants and involved in some way with the redevelopment project, and who have been named as New Developer Defendants.[3]

The New Developer Defendants concede that Plaintiffs' Third Amended Complaint adds new factual allegations relevant to them, but they argue that while such allegations may demonstrate overlapping ownership with the Initial Developer Defendants, which encompasses some common officers, directors, office space and management, this is not enough to support alter ego or conspiracy claims. Nor do Plaintiffs allege that such entities were "formed to perpetrate a fraud on them" or is there "any reason to believe that the Original Developer Defendants would be unable to satisfy any judgment" the Plaintiffs may obtain. New Developer Defs.' Mem. at 3. These New Developer Defendants assert therefore that the claims against them should be dismissed because they are "premised solely upon Plaintiffs' allegations that [they] are alter egos

---

[3] Plaintiffs assert that the chart shows that the Municipal Fish Market lease is held by WFMRL, which is 100% owned by WHR, which is in turn 100% owned by WDJV, which is in turn majority-owned by HSW, which is majority-owned by HMW, and accordingly, the entities are all affiliated. *See* Fish Market Organizational Chart, ECF No. 119-1, Ex. A.

or co-conspirators" of the Initial Developer Defendants, and Plaintiffs do not plead sufficient facts to support conspiracy or alter ego claims. New Develop. Defs.' Mot. to Dismiss at 1-2.

The crux of the New Developer Defendants' Motion to Dismiss is a recitation of case law indicating what type of information/evidence Plaintiffs would be required to provide in order to state a claim for alter ego (which they maintain Plaintiffs have not done) as well as an argument that Plaintiffs have not adequately alleged a claim of conspiracy. The New Developer Defendants seem to focus on a footnote in the Plaintiffs' Third Amended Complaint, which states that "[d]iscovery will show whether the Developer Defendant entities conspired to commit [ ] illegal acts. . . , or whether the[y] are simply one and the same, such that no conspiracy between them was necessary. For the purpose of this Complaint, and based on the representations by Developer Defendant to the Plaintiffs, the entities are treated as alter egos." Third Am. Compl. at 2, n.1. *See also* Third Am. Compl. ¶ 32 (alleging that WDGPJV, WHR, HSW and WDJV are alter egos of WHRL and HMW, and giving examples of the interrelated ownership of the entities, common management, and sharing of corporate offices, telephone numbers and websites.)

In their Opposition, Plaintiffs present no counterargument with regard to the New Developer Defendants' discussion of alter ego and conspiracy; rather, they begin by clarifying that the New Developer Defendants are mistaken in their assumption that Plaintiffs are "relying exclusively upon a corporate veil piercing theory" or that such defendants were named "solely for satisfaction of judgment purposes." Pls.' Opp'n at 4. Plaintiffs assert that while they do incorporate the term "alter ego" into their Third Amended Complaint a few times, for the purpose of describing the relationship between defendants, those defendant entities "are part of a complex, interwoven corporate network in which they each 'play [ ] a role in advancing some aspect of the development, financing, construction and, when finished, the operation of the [Wharf] Project.'"

Pls.' Opp'n at 4- 5 (citing Third Am. Compl. ¶ 34).[4]  Plaintiffs urge this Court to "consider [the]

complaint as a whole" in determining whether the allegations therein are sufficient to survive the

pending motion to dismiss.  *Matthews v District of Columbia*, 730 F. Supp. 2d 33, 37 (D.D.C.

2010) (citing *Lemmons v Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76 (D.D.C. 2006)).

To determine whether a complaint survives a Rule 12(b)(6) motion to dismiss, there is a

"'two-pronged approach' under which a court first identifies the factual allegations entitled to an

assumption of truth and then determines 'whether they plausibly give rise to an entitlement for

relief.'"  *See Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 35 (D.D.C. 2010) (discussing

the two steps set forth in *Iqbal*, 129 S. Ct. at 1949).   In this case, Plaintiffs generally rely on the

Fish Market Organizational Chart, attached as Ex. A to their Third Amended Complaint, and

various factual allegations contained in their Third Amended Complaint to support their assertion

that the Court may "draw a reasonable inference that the authorization necessary for HMW to

direct conduct respecting Plaintiffs' Leases, . . . , must flow down and through and be approved

by resolutions, delegations, or consents issued by the other entities in the corporate chain, which

actually perform the unauthorized acts, or direct or approve performance of the unauthorized acts

by their subsidiary entities."  *See* Pls.' Opp'n at 6; Ex. A; *see also* Third Am. Compl. ¶¶ 12-17

(containing allegations of wrongdoing by all defendants without distinguishing between them), ¶¶

32-35 (discussing alter egos and the relationship of the defendants in the organizational chart), ¶¶

116-197 (discussing actions taken by all defendant that allegedly breach Plaintiffs' leases).

---

[4] Footnote 1 and Paragraph 32 of the Third Amended Complaint are the only references to the
New Developer Defendants being alter egos.  In footnote 1 and paragraphs 3 and 4 of the Third
Amended Complaint, Plaintiffs use the term "conspiracy."  *See* Third Am. Compl., ECF No.
119.

Plaintiffs turn next to the exhibits attached to the Third Amended Complaint to demonstrate that there are sufficient facts to render their claims against the New Developer Defendants "plausible at the motion to dismiss stage." *Harris v District of Columbia Water and Sewer Auth.*, 791 F. 3d 65, 70 (D.C. Cir. 2015). More specifically, Plaintiffs look to the Wharf District Joint Venture, L.P. Consolidated Financial Statements, ECF No. 119-2, Ex. B, to flesh out the role of some of the New Developer Defendants in this lawsuit. Ex. B indicates that New Developer Defendant HSW entered into the Land Disposition Agreement ("LDA") with the District of Columbia on May 13, 2009, and assigned those rights to WDJV in 2014 with the effect that WDJV "through its wholly owned subsidiaries secured the developer rights" to the project. Ex. B at 10. New Developer Defendant WDJV was "formed to serve as 'Developer' under the . . . LDA with the District of Columbia" with authority that included the "Fish Market redevelopment." Ex. B at 6. Plaintiffs highlight Paragraphs 186-192 of the Third Amended Complaint, which reference Plaintiffs' allegations against the developer defendants for actions that occurred after 2014, and they conclude that "[f]or the Court to refuse to permit joinder of the *actual developer* of the project for the period beginning in April 2014 to the present would be inappropriate given the specific number of acts alleged to have been undertaken by the developer during this period that were contrary to the Tenant Leases." Pls.' Opp'n at 7 (emphasis in original). In the context of the pending Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the Plaintiffs' Third Amended Complaint and shall draw all reasonable inferences from the allegations in the light most favorable to the plaintiff. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

Plaintiffs ask this Court to accept as true several "reasonable factual inferences" derived from allegations in the Third Amended Complaint and the documents attached thereto. *In re*

*United Mine Workers*, 854 F. Supp. at 915. First, Plaintiffs claim that WDJV has operational authority over the redevelopment of the Fish Market, through its contracts with its subsidiaries, and it directs contractors doing redevelopment work, which allegedly violates Plaintiffs' Lease rights. *See* Ex. B at 12; Third Am. Compl. ¶ 156 (discussing towing from the parking lot), ¶¶ 183-185 (discussing security services), ¶¶ 187-194 (discussing the water line, fire alarm and fencing). Second, Plaintiffs contend that "WHR either actively directs the actions of WFMRL respecting conduct that violates the Tenant Leases . . ., or approves or has designated to other HSW affiliates this authority, thus subjecting WHR to direct liability, regardless of alter ego liability." *See* Third Am. Compl. ¶¶ 156, 183-185. Third, Plaintiffs assert that HSW has guaranteed its full and complete performance of Phase I construction under the LDA, which includes "Fish market improvements." *See* Ex. B at 13. The Court presumes the truth of Plaintiffs' factual allegations, and it permits Plaintiffs the benefit of every "favorable inference that may be drawn from the allegations of fact." *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citations omitted).

"A court's evaluation of a complaint to determine whether it states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Badwal* v. *Bd. of Trustees of Univ. of the District of Columbia.* 139 F. Supp. 3d 295, 307 (D.D.C. 2015) (quoting *Iqbal*, 556 U.S. at 679). In this case, the New Developer Defendants argue that all of Plaintiffs' claims against them are based on the interrelationship of the defendants and their status as alter egos, and as such, Plaintiffs have been unable to establish that these defendants are "bad actors, standing alone" who have committed wrongs against the Plaintiffs so as to withstand a motion to dismiss for failure to state a claim. Defs.' Reply at 5. Plaintiffs' have however propounded factual allegations from their Third Amended Complaint and

the documents attached thereto in support of their claims against the New Developer Defendants, which do not rely on a theory of alter ego, and they have asked this Court to draw reasonable inferences therefrom. Applying the two-pronged approach in *Matthews*, *supra.*, as set forth in *Iqbal, supra.*, this Court finds that Plaintiffs' Third Amended Complaint sufficiently states a claim against the New Developer Defendants and accordingly, the Court shall DENY the New Developer Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the New Developer Defendants' Motion to Dismiss. A separate Order accompanies this Memorandum Opinion.


_____
/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge